Roger LYTLE, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 40600.

Missouri Court of Appeals, Western District.

Dec. 27, 1988.

Melinda K. Pendergraph, Nancy A. McKerrow, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before FENNER, P.J., and MANFORD and GAITAN, JJ.

FENNER, Presiding Judge.

Appellant, Roger Lytle, appeals the denial of his Rule 27.26 (now repealed) motion for post conviction relief. Appellant was convicted after trial by jury of two counts of selling a controlled substance, in violation of § 195.017.2(4)(j), RSMo 1978 and § 195.020.1, RSMo Supp.1984. After his conviction was upheld on appeal, *State v. Lytle*, 725 S.W.2d 141 (Mo.App.1987), Lytle sought post conviction relief under former

Rule 27.26. His post conviction relief under Rule 27.26 was denied after hearing.

In this appeal, Lytle alleges the trial court erred in denying his motion for post conviction relief. Lytle argues he was denied his right to effective assistance of counsel in violation of the Sixth and Fourteenth amendments to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution, in that his trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances. Lytle cites five separate examples, each of which he argues constitute ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his attorney (1) failed to provide reasonably effective assistance; and (2) that the defendant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

## I. CLOSING ARGUMENT

■ Lytle argues first that counsel was ineffective by conceding, in closing argument that he was guilty of Count I. In this regard Lytle refers to the following statement by his trial counsel in closing argument:

"There's no use my trying to deceive you. There's no use my trying to say Roger didn't sell the marijuana because he did. Corporal James testified. I have no reason not to believe him."

Appellant takes this statement out of context and when viewed in context counsel did not in fact concede appellant's guilt. The final sentence of the above quoted paragraph was "But you have to think about the background of that transaction."

Counsel then went on to argue at great length that Lytle had no intent to sell the

marijuana, and that any crime was created by the overreaching of the highway patrol who, he maintained, were adept at turning ordinary citizens into criminals. Appellant's counsel argued that the highway patrol had Lytle convicted before they even knew who he was and added:

"On Count I, sure that sale was made in his house, but not at his request and not at his initative. [sic] So you have to deal with that in a way that you think is fair.

What, what was his motive? What was the intent? Roger didn't have any intent. He was sitting in a house. He was minding his business. He didn't even know any of these guys and they turn up in their disguises and put the heat on him."

Counsel further argued that this was all set up by some informant who was trying to save himself and that the offense was all manufactured by the law enforcement authorities. Counsel did not concede the appellant's guilt as to Count I, or urge the jury to return a verdict of guilty against him. On the contrary, he conceded only that a sale had occurred at the appellant's house—facts that were undisputed. Counsel was arguing that the appellant had no criminal intent, no motive and no interest in committing any crimes, which, he argues, were wholly manufactured by the conduct of the highway patrol.

At the hearing on Lytle's Rule 27.26 motion, his trial counsel gave an explanation for the complained of statement which is quoted verbatim from the transcript as follows:

"That was not done out of negligence or dereliction it was done by design. There was no argument that the sale was made and that Roger was there when it was made. The focus of my closing argument was that it was not something he wanted to do. I think pretty much as he testified,[1] he said, Well, they came in and I told them where it was and they left

---

1. Counsel was here referring to Lytle's testimony at the 27.26 hearing in that Lytle did not testify at trial.

the money and my argument to the jury was, if it was a sale it was certainly a backward sale and one initiated and coordinated by the highway patrol and not Roger and that was the thrust of what I was trying to present to the jury."

■ Allegations of ineffective assistance relating to matters of trial strategy do not provide a basis for post-conviction relief. *Camillo v. State*, 757 S.W.2d 234, 238 (Mo. App.1988). A defendant is bound by the decisions of his attorney as to the management of the trial and as to the stipulations which give effect to that strategy. *State v. Johnson*, 714 S.W.2d 752, 765[21] (Mo. App.1986).

■ In making such tactical decisions, there exists a strong presumption that counsel was effective, and it will be the rare exception where a strategic choice is declared to have been so unsound as to amount to ineffectiveness. *Porter v. State*, 682 S.W.2d 16, 19[3] (Mo.App.1984).

The undisputed facts at trial relevant to Count I, and the portion of counsel's argument in relation thereto, of which Lytle now complains, are significant to explain counsel's strategy. There was no dispute at trial but that an undercover narcotics officer of the Missouri Highway Patrol went to a residence in the company of an informant to attempt to purchase marijuana. Lytle met the undercover officer and his informant at the front door of the residence and let them in the house. The officer inquired about purchasing some marijuana and Lytle led him to a back bedroom where Lytle showed him several bags of marijuana. A conversation was had between Lytle and the officer. Lytle agreed to sell, and the officer agreed to purchase, a pound of marijuana for $650.00. Lytle took the money and gave the officer what was identified by a chemist, employed by the Missouri Highway Patrol, as having been analyzed and determined to be marijuana.

Counsel was confronted with a situation in the case at bar that left him with few choices and his strategy was to concede certain of the facts that could not be disputed in an obvious attempt to establish credibility for the position that his client had been set up and was the victim of overreaching by the highway patrol.

Lytle's claim of ineffective assistance of counsel alleging that counsel conceded his guilt in closing argument is denied.

## II. SHACKLING

Lytle argues next that counsel was ineffective for allowing him to be shackled with handcuffs and a waist chain in front of the jury during trial.

■ Generally the use of restraints for the purpose of maintaining order and security in the courtroom is a matter within the discretion of the trial court. *State v. Methfessel*, 718 S.W.2d 534, 537 (Mo.App. 1986). Nevertheless, the defendant is entitled to appear before the jury unfettered unless for good cause. *State v. Gilmore*, 661 S.W.2d 519, 525 (Mo.banc 1983). Furthermore, security measures, not supported by good cause, can be grounds for a new trial if they are such as to prejudice the defendant before the jury. *See, State v. Borman*, 529 S.W.2d 192, 195–196 (Mo. App.1975). The relevant determination is whether or not the defendant is prejudiced before the jury by the security measures employed.

The trial of the case at bar was a relatively short proceeding that was submitted to the jury at 2:53 p.m. on the same day that the jury was picked and sworn. Lytle did not testify at trial and was seated at counsel table during the entire proceeding. The foreman of the jury testified at the 27.26 hearing that he did not observe Lytle in any type of restraints at trial and that none of the other jurors mentioned Lytle being in restraints.

■ Where the record is devoid of any proof that the jurors actually saw the defendant in any restraints, an appellant court will not speculate as to whether they

did. *State v. Beal,* 470 S.W.2d 509, 516 (Mo.banc 1971).

■ The only evidence that Lytle was able to offer at his 27.26 hearing in an effort to show that he was prejudiced by the jury observing him in restraints was when he left the courtroom through the backdoor to the smoke area. Lytle testified at the 27.26 hearing that "there was a bunch of people out there, quite a few" and that he recognized some of them "as being in here and sitting in the jury box and being chosen back and forth." However, even assuming this testimony to be true and further assuming that the testimony supports the proposition that one or more of the individuals finally chosen to serve as a juror in Lytle's trial saw him leave the courtroom in restraints this would not be sufficient to show prejudice. It is recognized under the law that it is a normal and regular as well as a highly desirable and necessary practice to handcuff prisoners when they are being taken from one place to another and juries are aware of this practice. *State v. Hankins,* 642 S.W.2d 606, 610 (Mo.1982).

Lytle has failed to establish prejudice, the second prong of the test for a showing of ineffective assistance of counsel, as set forth in *Strickland v. Washington, supra.*

### III. JOINDER

In his third point in this appeal Lytle argues that his trial counsel was ineffective for failing to request a severance of the two counts of selling marijuana with which he was charged. Lytle argues that the two counts occurred more than three months apart, at different locations and that under Count I he was charged as acting alone while under Count II he was charged as an accomplice.

■ Pursuant to § 545.140.2, RSMo 1986, a defendant may be charged in the same indictment or information with separate offenses if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." In the present case, the two offenses with which Lytle was charged, the sale of marijuana, were of "the same or similar character", and were arguably part of a common scheme or plan by Lytle to knowingly and intentionally engage in the sale of marijuana.

Lytle did not offer any evidence at trial. However, at his 27.26 hearing he testified in relation to Count I that on April 8, 1985, he was merely staying at the house where the transaction took place. Lytle said that he didn't sell the marijuana or even know where it was kept by Jack McClintic, who actually lived at the house. Lytle testified that the undercover officer told him that he knew where the marijuana was so Lytle merely told him to help himself. Lytle further testified that the officer went in, "got the pound of marijuana out of Jack's bedroom ... laid $650 on the bed in Jack McClintic's bedroom and left." Lytle did admit that he "most likely" picked up the money off the bed "and recounted it."

The officer also testified at trial that the marijuana had a very strong pungent, salty smell to it, and that Lytle told him the marijuana came "from the Florida area where it sometimes gets off loaded into the water and floats for several days."

Count II related to an occurrence on July 11, 1985, where a different undercover highway patrolman testified at trial that he made arrangements to purchase some marijuana from Jack McClintic at a Fina gas station. When the officer arrived at the Fina station he testified that McClintic told him that his supplier had not yet arrived, but then almost immediately Lytle pulled up in his vehicle and McClintic said "There he is right now." McClintic told Lytle "it was all right, he could go out and bring the stuff in." Lytle went out to his vehicle, got a brown paper bag, came into the store, and immediately walked into the office area of the store. Lytle then returned empty handed into the outer portion of the

store where the others were located. McClintic left and went into the office and almost immediately returned stating, "there was no cocaine in the package." The officer next testified that Lytle said "there should be [some] in the package," that "there should be some in the sack." The officer then purchased the marijuana from McClintic for $950.

The officer further testified that after McClintic left the scene, he placed the marijuana in his car and began talking to Lytle. Lytle told the officer that "the marijuana came out of Dallas, Texas, and was brought up into this area by his employer."

Lytle's defense at trial in regard to Count II was that there was no evidence he knew there was marijuana in the sack he brought into the Fina station. Therefore, Lytle argued there was no evidence to connect him to the crime. At his 27.26 hearing Lytle testified that his employer, Roger Patterson, had given him the package and asked him to deliver it to McClintic. Lytle said he had "no idea" what was in the bag.

The evidence reflects that the crimes charged in Counts I and II were not isolated instances of unrelated conduct. The offenses were separated by only three months and they both involved the sale of a large quantity of marijuana, for several hundred dollars, to individuals Lytle did not know. Jack McClintic had some relation to both offenses and in both instances the marijuana was brought in from out of state.

In the case at bar the record reveals that the two marijuana sales were of the same or similar character and they constituted parts of a common scheme or plan. Accordingly, the two charges met the requirements for permissive joinder. Section 545.-140.2, RSMo 1986.

▉ Lytle argues that even if the two offenses were properly joined, he nevertheless was prejudiced by his attorney's failure to request a severance. Lytle's trial counsel explained at the 27.26 hearing that not requesting a severance was part of his trial strategy. Counsel explained that he felt it would be helpful to Lytle's defense for the jury to have the opportunity to assess the alleged oppressive behavior of the highway patrol on both occasions. The theory obviously being that the jury would be less sympathetic to the highway patrol if they knew that this alleged oppressive behavior was not just an isolated incident but rather a course of conduct by the highway patrol.

The decision of whether or not to sever counts is left to the sound discretion of the trial court. *State v. Warren,* 717 S.W.2d 231, 233 (Mo.App.1986). Had a motion to sever been made in the case at bar, and had it been denied by the trial court, the appellant would still have the burden of showing that the failure to sever resulted in substantial prejudice to his defense. *State v. Smith,* 735 S.W.2d 41, 45 (Mo.App.1987); § 545.885.2, RSMo 1986. The second prong of the test for ineffective assistance of counsel under *Strickland v. Washington, supra,* requires a showing of prejudice. The mere failure to request a severance does not establish prejudice unless the appellant can show that it would have been an abuse of the trial judge's discretion to deny a severance. There has been no such showing in the case at bar.

Lytle cites *State v. Davis,* 738 S.W.2d 517 (Mo.App.1987), for the proposition that if evidence of the other crime or crimes charged would not have been before the jury unless the offenses were tried together then the defendant is prejudice by the failure to sever. However, if the evidence of the other crimes would have been admissible at a separate trial, the defendant is not prejudiced by a failure to sever. *State v. Smith, supra* at 45. In the case at bar the evidence of which appellant complains was admissible even though it showed the commission of another drug-related crime because it exhibited appellant's knowledge, intent or a common scheme or plan under the circumstances herein. *State v. Rose,* 727 S.W.2d 919, 921–922 (Mo.App.1987); *State v. Chance,* 719 S.W.2d 108, 110 (Mo. App.1986).

Appellant's argument that his trial counsel was ineffective for failing to request a severance is denied.

## IV. PRETRIAL INVESTIGATION

In Lytle's fourth point, arguing that he was ineffectively represented at trial, he states that his trial counsel failed to investigate and prepare for trial. Lytle complains that his trial counsel relied on the prosecution and state witnesses and failed to conduct any independent investigation. Lytle complains specifically that his lawyer did not move for disclosure of the name and location of the informant who accompanied the officer on April 8, 1985, in the incident to which Count I related.

█ Counsel has a duty to make reasonable investigations or to make reasonable decisions that makes particular investigations unnecessary. *Strickland v. Washington, supra,* 466 U.S. at 691, 104 S.Ct. at 2066. A decision to forego an investigation must be evaluated for reasonableness under all of the particular circumstances of the case, and an appellate court will give "great deference" to counsel's judgment in making such an evaluation. *Armour v. State,* 741 S.W.2d 683, 689 (Mo. App.1987). Furthermore, when a defendant asserts that counsel was ineffective by failing to investigate, he must allege and prove that an adequate investigation would have uncovered evidence that would have improved his trial position and that he was deprived of substantial evidence by counsel's neglect. *Stuckey v. State,* 756 S.W.2d 587, 592 (Mo.App.1988); *Daugherty–Bey v. State,* 726 S.W.2d 413, 415 (Mo.App.1987).

█ A defendant who claims that his trial counsel was ineffective in not calling a particular witness must allege and prove that counsel's omission materially affected the outcome of the trial. *Mountjoy v. State,* 750 S.W.2d 471, 473 (Mo.App.1988). The defendant must show what the witness' testimony would have been and how it would have helped him. The defendant had the burden of proving that the testimony would have provided a viable defense or at the very least that it would have been helpful in his defense. *Id.*

Lytle failed to meet his burden as set forth by the above cited authority. Point four is denied.

## V. CONDUCT AT TRIAL

In his fifth point in this appeal Lytle argues that his trial counsel was ineffective as a result of his incompetence at trial as illustrated by his failure to cross examine the highway patrolman involved in Count I and in failing to object to the prosecution's improper questioning of the trooper involved in Count II.

█ The record reflects that counsel did cross examine the highway patrolman involved in Count I. Furthermore, questions of impeachment of witnesses are matters of trial strategy which will not normally form the basis of a claim of ineffectiveness. *Davis v. State,* 748 S.W.2d 698, 700 (Mo.App.1988); *Berry v. State,* 714 S.W.2d 676, 678 (Mo.App.1986). The general rule is that the extent of cross-examination and the subjects covered must in virtually every case be left to the judgment of counsel. *Williams v. State,* 712 S.W.2d 404, 409 (Mo.App.1986).

█ Lytle also complains that counsel should have objected to the following testimony of the trooper involved in Count II:

"A. (Trooper) ... He [appellant] told us that the marijuana came out of Dallas, Texas, and was brought up into this area by his employer.

Q. (Prosecutor) ... Okay. When he was referring to the marijuana, was he referring to the marijuana that you had received from Mr. McClintic?

A. Yes, he was.

Q. And do you recall just exactly how it came up?

A. Yes, he ask [sic] me if I could give him a bud, meaning a small ah ... part of the marijuana for help doing [sic] the

transaction, and I did this. I let him take a bud out of the bag.

Q. And why would you do that?

A. It's a common practice. Alot of times in drug deals where the person that does it, they will not only want the monetary reward, but they'll also want some of the substance."

Lytle claims that trial counsel should have objected to this testimony or made it clear that the "he" the trooper was referring to as having request the "bud" was McClintic and not Lytle. This was a matter of trial strategy. Any such objection or inquiry would have further emphasized and drawn attention to the testimony. It is also possible that the trooper would have given an answer inconsistent with Lytle's explanation.

Counsel's conduct at trial, as argued in this point, did not show ineffective assistance of counsel.

Lytle further argues that even if no single error raised on appeal constitutes ineffective assistance of counsel, the multiple errors, viewed together, indicate that he was denied effective assistance of counsel. It being the opinion of this court that none of the alleged errors of which Lytle complains were prejudicial to his defense, viewing them together does not necessarily alter their nature. *See Williams v. State, supra* at 410–411. It cannot be said in the case at bar that counsel's assistance caused the trial to be unreliable as having produced a just result.

The judgment of the trial court is affirmed.

All concur.