Tommy Everett **JONES, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 15949.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 13, 1989.

Sharon Ayers, Asst. Public Defender, Poplar Bluff, for appellant.

William L. Webster, Atty. Gen., Debra M. Miles, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Tommy Everett Jones ("movant") appeals from a judgment denying his second amended motion under Rule 27.26, Missouri Rules of Criminal Procedure (18th ed. 1987),[1] to vacate his conviction, per jury trial, of stealing a chain hoist of the value of $150 or more, for which he was sentenced as a persistent offender to ten years' imprisonment. The conviction was affirmed on direct appeal. *State v. Jones*, 708 S.W.2d 775 (Mo.App.1986).

Relief was denied in the 27.26 proceeding after the circuit court, henceforth referred

to as "the motion court," conducted a hearing at which movant and the State presented evidence.

Movant's brief presents two points; each maintains movant received ineffective assistance of counsel at the jury trial.

The evidence on which the guilty verdict was based is synopsized in this Court's opinion in the direct appeal. 708 S.W.2d at 776. A reading of that synopsis is essential in understanding movant's contentions here. In this opinion we summarize only the evidence at the 27.26 hearing pertinent to the issues we must decide.

Movant testified in the motion court that prior to the jury trial he told his appointed lawyer, Nancy Hentig Narrow, that he wanted Phyllis Barks and Bill Hunsperger called as "alibi witnesses." According to movant, Barks and Hunsperger could have testified movant was at a bar the night the hoist was stolen and he had no chain hoist with him and no vehicle in which to put one. Narrow did not call Barks or Hunsperger as witnesses at movant's trial.

On cross-examination at the 27.26 hearing, movant conceded he left the bar at some point the night the hoist was stolen, and the only question was when. Movant admitted Barks and Hunsperger did not accompany him when he departed.

Barks, presented by movant as a witness in the motion court, testified she was with movant at a Dexter tavern—the Paper Doll—the night the hoist was stolen. She avowed they were together "the whole night," even after the tavern closed. According to Barks, movant had no chain hoist with him and nothing to carry one in. Barks maintained no one contacted her about being a witness for movant before his trial.

On cross-examination Barks admitted movant left the tavern alone, but she did not recall what time. She remained there and did not see where movant went or

---

1. Rule 27.26 was repealed effective January 1, 1988. Missouri Rules of Court (19th ed. 1988), p. 142. Movant's action continues to be governed by former Rule 27.26, as movant's sentence was pronounced prior to January 1, 1988, and his motion to vacate such sentence was pending prior to January 1, 1988. Rule 29.-15(m), Missouri Rules of Criminal Procedure (19th ed. 1988).

what he did while he was gone. She acknowledged that the place where the hoist was stolen was "right there close" to the tavern.

Hunsperger, presented by movant as a witness in the motion court, testified he (Hunsperger) was at the tavern about four or five hours the night the hoist was stolen. Movant, according to Hunsperger, was at the tavern with Barks when Hunsperger left "around 10:30 or 11:00." Movant had no chain hoist with him and was not driving a vehicle. Hunsperger conceded he did not know when movant left or where movant went once he left. Hunsperger confirmed that the place where the hoist was stolen was "right across the railroad tracks from the bar." Hunsperger denied that anyone contacted him about what he knew prior to movant's trial.

Lawyer Narrow, called by the State as a witness in the motion court, testified Barks was contacted twice prior to movant's trial. One contact was by Richard Chronister, an investigator for Narrow's office. Chronister reported Barks said she and movant were at the tavern the night the hoist was stolen, that she did not "really know" whether movant left, that he may have but she "really couldn't say for sure."

The other contact with Barks was by Dwayne Simons, an investigator for a public defender who withdrew from representing movant prior to trial. A report by Simons quoted Barks as saying she and movant were "drinking on credit," that they had no money, and that movant "left for a period of about 45 minutes to get some money."

Narrow testified that Hunsperger was contacted by the same two investigators prior to movant's trial. Simons' report quoted Hunsperger as saying he "had no story" and did not know anything about movant and the arrest. Referring to Chronister's contact with Hunsperger, Narrow testified: "The report from ... Chronister ... said that they were at the Paper Doll at the same time that night. That they were drinking. That he, Mr. Hunsperger, left at 8:30, and Tommy Jones was still there at that time."

Narrow recalled she discussed with movant the results of the investigators' contacts with Barks and Hunsperger. There was "some disagreement" between her and movant as to whether to call Barks and Hunsperger as witnesses. Narrow felt it would not be proper trial strategy to do so. She explained:

"Basically, there were two things that were our major concerns: One is that [movant] had informed me that he did not want a conviction of anything, a misdemeanor or a felony, based on the fact that he was on parole and felt that even a misdemeanor conviction could cause his parole to be revoked.

He also had another pending charge at the time and felt like another conviction could affect that other pending charge if it was pursued beyond the pending stage.

Our strategy, basically, was to try to disprove the testimony that he was involved in, both through his co-defendant and through another witness, who, initially, gave his name as being seen in the area."

Narrow recounted that at movant's trial she developed on cross-examination of the latter witness that he was unable to make any "firm identification" of movant. As to the co-defendant, Narrow conducted an extensive cross-examination, using a "prior inconsistent statement" to impeach him.

Asked on cross-examination about the decision to not use Barks as a witness, Narrow replied:

"Ms. Barks was not called because: number one, she gave conflicting statements about when Tommy was there, or at least, what could be considered as inconsistent statements, felt that to call an alibi witness, who was an imperfect alibi witness would make it look like he was trying to hide something."

The motion court, with commendable diligence, made comprehensive findings of fact and conclusions of law. They included this:

"The testimony of [Barks and Hunsperger] would not have provided an alibi

for movant because it did not demonstrate that he could not have been at the scene of the crime. The testimony could be taken as damaging to the defense of the criminal case because it placed movant at a tavern near where the chain hoist was stolen. The testimony that movant left the tavern and then came back tends to corroborate the testimony of the accomplice and shows that movant had the opportunity to commit the crime. The testimony would not have exonerated or helped movant nor provided a viable defense. There is no showing that the trial strategy as to these witnesses was erroneous, and no showing that movant was prejudiced by the failure to call them. Therefore, the refusal to call these two potentially damaging witnesses did not constitute ineffective assistance of counsel."

Movant's first point on appeal reads:

"The [motion] court erred ... in finding [movant] had not carried his burden of proof of his claim of ineffective assistance of counsel when the [motion] court found that [Narrow's] failure to interview and call as witnesses on behalf of [movant] Phyllis Barks, Bill Hunsperger and Norma Gisi was a matter of trial strategy, and [movant] was prejudiced thereby because the testimony of ... Hunsperger and ... Barks at trial would have provided [movant] with an alibi...."

Ms. Gisi, named in the first point, has not yet been discussed, as movant does not claim she was an alibi witness. Movant's complaint regarding her is considered *infra.*

■ To prevail on a claim of ineffective assistance of counsel a prisoner must show (1) his lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987), citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The prisoner must satisfy both the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. *Sanders,* 738 S.W.2d at 857. In reviewing such a claim, courts are not required to consider both prongs; if a prisoner fails to satisfy one, the court need not consider the other. *Id.* Additionally, a court need not determine the performance component before examining for prejudice; if it is easier to dispose of the claim on the ground of lack of sufficient prejudice the reviewing court is free to do so. *Id.* The selection of witnesses and the introduction of evidence are questions of trial strategy; the mere choice of trial strategy is not a foundation for finding ineffective assistance of counsel. *Id.* at 858.

Appellate review of a circuit court judgment in a proceeding under Rule 27.26 is limited to a determination of whether the findings, conclusions, and judgment are clearly erroneous. Rule 27.26(j); *Sanders,* 738 S.W.2d at 857; *Futrell v. State,* 667 S.W.2d 404, 405[1] (Mo. banc 1984).

The assertion in movant's first point that Narrow failed to interview Barks and Hunsperger is flatly contrary to Narrow's testimony that Barks and Hunsperger were contacted twice prior to movant's trial, once by investigator Simons and once by investigator Chronister. While Barks and Hunsperger testified no one contacted them, the motion court was not obliged to accept that testimony as true. A circuit court in a proceeding under Rule 27.26 is free to believe or disbelieve evidence, contradicted or undisputed. *Sanders,* 738 S.W.2d at 857.

The motion court obviously believed Narrow and disbelieved Barks and Hunsperger on the issue of whether Barks and Hunsperger were contacted prior to movant's trial, as the motion court found Narrow made the decision that Barks and Hunsperger should not be called as witnesses after receiving the reports of interviews by the investigators.

■ The motion court's findings that (a) Narrow's decision to not call Barks and Hunsperger as witnesses was a matter of trial strategy, (b) their testimony would not

have exonerated movant but might have damaged him, and (c) Narrow's strategy in regard to Barks and Hunsperger was not erroneous, are fully supported by the evidence. Movant's claim that Narrow rendered ineffective assistance in failing to call Barks and Hunsperger as witnesses at movant's trial is meritless, and borders on frivolous.

Movant's first point, as we have seen, also indicts Narrow for ineffective assistance in failing to interview Norma Gisi and call her as a witness.

Movant testified in the motion court that he told Narrow he wanted her to investigate the value of the chain hoist, that it might be old and its value might be less than $150. Movant added that he asked Narrow "to contact the lady that took care of the records" at Gisi Oil Company, the owner of the hoist, and to call the lady as a witness, but Narrow failed to do so.

At trial Gale Miller, a part owner of Gisi Oil Company, testified the hoist's fair market value was $300.

Movant testified in the motion court that Miller had not been in the business six months "so he wouldn't have too much to say about the chain hoist anyway." Movant also testified in the motion court that prior to trial he talked to Raymond Gisi, whose brother used to own Gisi Oil Company. Movant quoted Raymond Gisi as saying the hoist was not worth $50.

Raymond Gisi, presented by movant as a witness in the motion court, testified he visited movant in jail while movant was awaiting trial. Gisi quoted movant as complaining that the value of the chain hoist was too high. Asked whether he (Gisi) told movant anything about the hoist's value, Gisi answered: "Possibly it's—if it's right, I maybe have told him that it wasn't worth that much, but I didn't see the chain hoist. I don't know anything about it. I don't know what it's worth."

Gisi revealed that the lady who "took care of the books" was his brother's wife, Norma Gisi. Asked whether movant ever inquired about the identity of the bookkeeper, Raymond Gisi replied, "Not that I recall."

Narrow, during her testimony in the motion court, was asked what investigation she made in connection with the value of the hoist. Her answer:

"My investigator ... made several phone calls. One of them, I believe, was to Tennessee or somewhere out of state. The other call that I'm more familiar with was to a place in Cape Girardeau, where they told us that a three-ton chain hoist—an imported one you might be able to get as cheap as $600—an American-made one would, normally, be in the neighborhood of $900 new."

Narrow testified she was unable to find anyone willing to testify that the value of the hoist was less than $150. Narrow denied that movant asked her to contact "the lady that did the paper work" at Gisi Oil Company.

Movant did not call Norma Gisi as a witness in the motion court, nor did he present any evidence in the motion court that the fair market value of the hoist was less than $150.

The motion court found movant's complaint about Narrow's failure to call Norma Gisi as a witness at trial was without merit, as there was no showing what her testimony would have been.

Movant, in his first point on appeal, boldly proclaims the testimony of Norma Gisi "would have shown that the value of the chain hoist was less than one hundred fifty dollars." Nowhere in movant's brief does he support that declaration by reference to evidence in the record, and we find none.

■ A prisoner who claims his lawyer rendered ineffective assistance by failing to call a particular witness must show, among other things, what the witness' testimony would have been and how it would have helped him. *Lytle v. State,* 762 S.W.2d 830, 837[15] (Mo.App.1988); *Mountjoy v. State,* 750 S.W.2d 471, 473[4] (Mo.App.1988); *Ryder v. State,* 657 S.W.2d 64, 65[1] (Mo.App.1983). As movant has failed to do so, his complaint about Narrow's failure to call Norma Gisi as a witness is as patently destitute of merit as his complaint about Narrow's failure to call Barks and Hunsperger. Movant's first point on appeal is denied.

Movant's second point avers Narrow rendered ineffective assistance, and the motion court erred in ruling otherwise, in that Narrow "did not interview and investigate" State's witness Gale Miller, who testified at trial that the fair market value of the hoist was $300.

Narrow conceded in the motion court that neither she nor anyone else from her office interviewed Miller. Movant insists that an interview with Miller would have revealed he had been at Gisi Oil Company only six months prior to trial, that he was not familiar with the subject hoist, that he based his testimony as to its value on hearsay, and that he was not qualified to testify regarding value.

The point suffers the same infirmity as movant's complaint about Narrow's failure to call Norma Gisi as a witness. Nowhere in the record is there any showing that Miller was unfamiliar with the hoist, that he based his testimony as to its value on hearsay, or that he was unqualified to express an opinion on value.

As reported in this Court's opinion on direct appeal, Miller was a part owner of Gisi Oil Company. As to common classes of personal property, an owner thereof, without further qualifications, may testify to its reasonable market value, and the jury determines the weight and value of such testimony. *State v. Brewer*, 286 S.W.2d 782, 783[1] (Mo.1956). The owner's testimony is competent to establish the property's value even though the owner is not qualified as an expert in appraising such property. *Id.* at 783–84[2].

The motion court found movant had shown no prejudice from Narrow's "failure to investigate and interview Gale Miller." That finding is not clearly erroneous; on the contrary, it is manifestly correct.

Movant's second point is denied and the judgment of the motion court is affirmed.

HOLSTEIN, C.J., and GREENE, J., concur.