Leroy J. WATKINS, Appellant,

v.

STATE of Missouri, Respondent.

No. 16307.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 15, 1990.

Motion for Rehearing or Transfer Denied
March 9, 1990.

Application to Transfer Denied
April 17, 1990.

Larry Maples, Asst. Public Defender, Joplin, for appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Leroy J. Watkins ("movant") appeals from a judgment denying—after an evidentiary hearing—his second amended motion under Rule 27.26 [1] to vacate his conviction of assault in the first degree, § 565.050, RSMo Cum.Supp.1984, for which he was sentenced to 20 years' imprisonment. The conviction, a result of trial by jury, was affirmed on direct appeal. *State v. Watkins*, 724 S.W.2d 674 (Mo.App.1987).

The first four of movant's eight points relied on pertain to the prosecutor's cross-examination of movant at the jury trial.

Movant presented himself as a witness in his defense. During direct examination by his lawyer, henceforth referred to as "defense counsel," movant testified he had been convicted of "felony stealing" in Jasper County in October, 1980, and had been convicted of the same crime in Newton County in February, 1981. Then, this:

"Q And you've had no other brushes with the law since.

A Never."

At the outset of movant's cross-examination by the prosecutor this dialogue occurred:

"Q ... you told [defense counsel] a minute ago that the two convictions were the only brushes with the law that you'd ever had, isn't that correct?

A I think felonies, yes.

---

1. Rule 27.26 was repealed effective January 1, 1988. Missouri Rules of Court (19th ed. 1988), p. 142. Movant's action continues to be governed by former Rule 27.26, as movant's sentence was pronounced prior to January 1, 1988, and his motion to vacate such sentence was pending prior to January 1, 1988. Rule 29.-15(m), Missouri Rules of Criminal Procedure (20th ed. 1989).

Q You used the word, I believe, that those were the only brushes you'd had with the law, or he did, isn't that right?

A (no response)

Q In fact, you've had many other brushes with the law.

A I've had a few, yeah, but. . . .

Q Isn't it true that you were arrested in a brush with the law on March 21st of 1976, for resisting arrest, assault and public drunkedness [sic]?"

At that point defense counsel objected on the grounds of "improper impeachment," arguing the "only things that can come into play are past convictions." The prosecutor responded that movant's testimony on direct examination had "opened up his entire arrest record, not just his conviction record." The trial court overruled defense counsel's objection. Cross-examination continued:

"Q . . . Isn't it true . . . that on March 21, 1976, you were arrested by the Joplin Police Department for resisting arrest, assault and public drunkedness [sic]?

. . . .

A I was arrested, yeah, but it wasn't my fault.

Q Thank you. Isn't it true, Mr. Watkins, that on April 19, 1979, you were arrested by the Joplin Police Department for fighting in public? Isn't that true?"

Defense counsel registered the "[s]ame objection." It was overruled. This colloquy ensued:

"Q (by [prosecutor]) Do you want to see your jail card, Mr. Watkins?

A I don't remember, sir. I've been hit in the head too. I've got brain damage and it's hard—

Q You've got brain damage?

A Right. From when the cops beat me in the head that time."

Movant's first point avers:

"The hearing court clearly erred in denying [movant's] 27.26 motion because the trial court denied [movant] his right to trial by a fair and impartial jury . . . and due process of law . . . and equal protection of the law . . . in that the trial court, over [movant's] objection, allowed [movant] to be impeached at trial with his arrests, in violation of the established rule against such impeachment, and in violation of [movant's] right to be tried solely for the offense charged, and to [movant's] prejudice because the arrests were for assault, resisting arrest, public drunkenness, and fighting in public, and [movant] was being tried on assault."

Pertinent to the above point the hearing court found:

"As to . . . Movant's contention . . . that the trial court should have sustained his trial counsel's objection when . . . Movant was impeached with prior arrests it is clear that this matter should have been raised on the direct appeal but from the transcript it is clear that any attempt to rely upon this grounds would have failed in that . . . Movant's character was put at issue by . . . Movant and that he was properly impeached by the use of his prior arrests."

Our review is limited to a determination of whether the findings, conclusions, and judgment of the hearing court are clearly erroneous. Rule 27.26(j); *Futrell v. State*, 667 S.W.2d 404, 405[1] (Mo. banc 1984).

Trial errors are not cognizable in a proceeding under Rule 27.26. *State v. Macon*, 403 S.W.2d 630, 631[2] (Mo.1966); *Fullerton v. State*, 750 S.W.2d 484, 487[5] (Mo.App.1988); *Hill v. State*, 641 S.W.2d 194, 195 (Mo.App.1982). A proceeding under Rule 27.26 is not a substitute for direct appeal and does not afford a second appeal. Rule 27.26(b)(3); *O'Neal v. State*, 486 S.W.2d 206, 207–08 (Mo.1972); *Choate v. State*, 659 S.W.2d 354, 355[1] (Mo.App. 1983). Trial errors cannot be made a basis for relief under Rule 27.26 by simply alleging as a conclusion that they resulted in an unfair or impartial trial, or that they affected constitutional rights. *O'Neal*, 486 S.W.2d at 207–08[2].

An allegation that a trial judge erred in receiving evidence is simply an allegation of court error during the course of the trial which is not reviewable under

Rule 27.26. *Lane v. State*, 611 S.W.2d 44, 46[3] (Mo.App.1981); *Achter v. State*, 545 S.W.2d 86, 88[5] (Mo.App.1976).

In the instant case the motion for new trial filed by defense counsel made no mention of the prosecutor's questioning of movant regarding his arrests. The brief filed on movant's behalf by the lawyer who represented him in the direct appeal (henceforth referred to as "appellate counsel") likewise ignored the subject. It is thus clear that the issue was not raised on direct appeal.

█ An issue that could have been raised on direct appeal, even if it be a constitutional claim, cannot be raised in a proceeding under Rule 27.26 unless fundamental fairness so requires and only in rare and exceptional circumstances. *Drake v. State*, 753 S.W.2d 65, 67[5] (Mo.App.1988); *Paynes v. State*, 752 S.W.2d 331, 333[2] (Mo.App.1988). No such circumstances exist here, as explained in the next four paragraphs.

In *State v. Ball*, 736 S.W.2d 551 (Mo. App.1987), the accused, on direct examination by his lawyer, was asked about his convictions. The accused stated he had been arrested twice. His lawyer then asked, "Other than those two convictions have you had any other arrests?" The accused answered no. On cross-examination the prosecutor asked the accused about a past arrest for second degree burglary. On appeal the accused maintained the trial court committed plain error in failing to declare a mistrial when the prosecutor made that inquiry. Rejecting the point the Eastern District of this Court stated that generally, evidence of a prior arrest cannot be used to impeach the credibility of an accused. This rule does not apply, however, if the accused has "opened up" the issue of prior arrests. The Eastern District held that the accused, by denying he had any arrests other than the two which resulted in convictions, had opened up the issue of prior arrests.

In *State v. Dunlap*, 706 S.W.2d 272 (Mo. App.1986), the accused, on direct examination by his lawyer, was asked, "Do you have a criminal record, Tony?" The ac-

cused responded, "No, I don't." Thereafter the prosecutor not only cross-examined the accused as to his prior arrests, but also introduced rebuttal evidence of the accused's prior arrests for assault in the first degree and unlawful use of a weapon. On appeal the accused contended the trial court erred in receiving the rebuttal evidence. The Eastern District of this Court disagreed, holding that when an accused introduces the issue of his criminal record and upon cross-examination denies previous arrests, the State may produce rebuttal evidence to impeach the accused's denial. *Id.* at 274[3].

In *State v. Payton*, 559 S.W.2d 551 (Mo. App.1977), the accused, on direct examination by his lawyer, testified that except for an arrest for a misdemeanor marijuana charge which resulted in probation he had never been in "any other trouble with the law." On cross-examination the prosecutor asked the accused whether he had been arrested for burglary in the second degree and stealing. The accused's request for a mistrial was denied. On appeal the Eastern District of this Court held that an accused may be cross-examined regarding any subject matter concerning which he testifies on direct examination. Consequently, it was proper for the prosecutor to cross-examine the accused regarding prior arrests. *Id.* at 554[5].

█ In the instant case, in response to defense counsel's question about whether he had "other brushes with the law" since February, 1981, movant replied, "Never." The prosecutor subsequently asked movant on cross-examination whether he had testified that the two convictions revealed on direct examination were the only brushes with the law he had ever had. Movant answered, "I think felonies, yes." The prosecutor then asked movant whether in fact he had had many other brushes with the law. Movant acknowledged he had "had a few." The hearing court, as we comprehend its findings, ruled that the above testimony opened up the subject of movant's prior arrests. Applying *Ball*, *Dunlap* and *Payton*, we hold that this

finding by the hearing court is not clearly erroneous.

The hearing court correctly held that movant's complaint regarding the prosecutor's questions about movant's arrests was not cognizable in the 27.26 proceeding, as it should have been raised on direct appeal. The hearing court, based on its finding that movant's testimony had opened up his arrest history, also correctly ruled that even had the point been asserted on direct appeal it would have been futile. Movant's first point is denied.

Movant's second point avers defense counsel rendered ineffective assistance in failing to preserve in the motion for new trial movant's objection to the prosecutor's questions about movant's "arrest record." Movant insists that preservation of the objection "would almost certainly have resulted in the trial court or the Court of Appeals granting a new trial."

The absence of merit in movant's objection to the prosecutor's questions about movant's "arrest record" has been demonstrated in our discussion of his first point. Defense counsel cannot be branded ineffective for failing to preserve a non-meritorious claim in the motion for new trial. *Gilmore v. State*, 731 S.W.2d 369, 371[3] (Mo.App.1987); *Brown v. State*, 589 S.W.2d 368, 370[2] (Mo.App.1979). Movant's second point is denied.

Movant's third point alleges appellate counsel rendered ineffective assistance by failing to brief for review on direct appeal the "improper impeachment of [movant] with his arrest record." Movant declares that even though the issue was not preserved in the motion for new trial it could have been considered as plain error on appeal.

The absence of merit in movant's complaint about the prosecutor's questions regarding movant's "arrest record" has been demonstrated in our discussion of his first point. Appellate counsel did not render ineffective assistance in failing to brief this non-meritorious claim for plain error review. *Olds v. State*, 655 S.W.2d 818, 819[3] (Mo.App.1983). *See also: Hines v. State*,

691 S.W.2d 918, 920–21[3] (Mo.App.1985). Movant's third point is denied.

Movant's fourth point asserts he was denied effective assistance of counsel at the jury trial when defense counsel questioned movant about "other brushes with the law" since February, 1981. Movant avers defense counsel knew or should have known that (a) the inquiry "ran the risk of opening up [movant's] arrest record on cross-examination," and (b) said record was "extremely damaging."

While defense counsel's question was directed to the period after February, 1981, movant chose to answer, "Never." The prosecutor seized upon that answer in asking movant whether he had testified that the two convictions revealed on direct examination were the only brushes with the law he had ever had. When movant responded, "I think felonies, yes," the prosecutor asked movant whether in fact he had had many other brushes with the law. Movant conceded he had "had a few." It is thus evident it was not defense counsel's question on direct examination that opened up the subject of movant's prior arrests, but rather movant's answer "Never" and his responses to the prosecutor's questions at the outset of cross-examination. Movant's fourth point is denied.

We next consider movant's sixth point which states movant was denied effective assistance of counsel at the jury trial in two respects. The first is that defense counsel failed to "elicit from defense witness John Stewart ... that even though [he] was present at the time of the alleged offense and in a position to observe, that he never saw the State's chief witness Jack French exit the bathroom in which the alleged altercation took place and from which he claimed to have observed the altercation, when ... Stewart would have testified to this had he been asked and said testimony would have supported [movant's] testimony that ... French had exited the bathroom prior to the altercation and was therefore not in a position to observe, and when said testimo-

ny would have therefore discredited the State's only eyewitness."

A synopsis of the evidence regarding the assault appears in this Court's opinion in the direct appeal, 724 S.W.2d at 674–75. Rather than repeat it here we refer the reader there.

Movant's characterization of Stewart as a "defense witness" is misleading. Stewart was not called as a witness at the jury trial by either the prosecution or the defense.

At the jury trial the State's witness who described movant's assault on the victim (William Curtis Meyers) was Jack Daniel French. He testified he was in the men's rest room, the site of the incident, when movant commenced the assault by striking Meyers "upside the right side of his head, using his right fist." French testified that as the beating continued he (French) "managed to get around behind [movant] and into the doorway." Asked where movant and Meyers "ended up" when the assault concluded, French answered, "[T]hey ended up [movant] in the hallway, [Meyers] inside the doorway of the bathroom."

Movant presented Stewart as a witness in the hearing court. Stewart testified he was in the Pub Bar on the night of the assault but defense counsel never contacted him. Asked what he saw, Stewart testified:

"Well, I really didn't see the altercation. I was present in the bar at the time.

. . . .

Q  ... you're aware of the fact that the altercation took place within the bathroom there?

A  Yes, uh-huh.

Q  Okay. Did anything unusual happen around the bathroom on the outside of the bathroom?

A  Well, to my knowledge, no, because I was at the bar and my back was to the—

Q  Okay.

A  —to the restroom.

Q  Did, uh, did you ever have occasion to see, uh, Leroy Watkins laying on top of Curtis Meyers, or—

A  No.

Q  You didn't? You didn't, uh, go over and assist Curtis Meyers when he was laying on the floor outside the bathroom?

A  Yes, I did.

Q  Did you see anybody else exit the bathroom at that time?

A  No. Uh, not to my recollection, I don't."

At the jury trial movant testified the altercation ended when Meyers fell to the cement floor, hitting his head. Movant, so he testified, fell on top of Meyers. Movant recounted that when Meyers "didn't come to," movant "hollered for them to call an ambulance."

Inasmuch as Stewart never saw movant on top of Meyers it is evident Stewart did not reach the rest room immediately after the assault ended, consequently it is inferable French had departed before Stewart arrived.

Pertinent to this issue the hearing court found: "Movant also called John Stewart who indicated that he was never contacted by [defense counsel] but that he really did not see the altercation and that nothing unusual happened around the bathroom." The hearing court further found: "Movant has failed to meet his burden of proof as to [defense] counsel failing to investigate witnesses ... and further it is found by the Court that ... none of the people presented by ... Movant at his hearing on this motion would have in any way helped ... Movant by their testimony during the trial of the criminal case."

■ A prisoner who claims his lawyer was ineffective in not calling a particular witness at trial must allege and prove that the omission materially affected the outcome of the trial. *Lytle v. State*, 762 S.W.2d 830, 837[15] (Mo.App.1988); *Mountjoy v. State*, 750 S.W.2d 471, 473[4] (Mo.App.1988). The prisoner must show what the witness' testimony would have been and how it would have helped him.

*Lytle,* 762 S.W.2d at 837[15]; *Mountjoy,* 750 S.W.2d at 473[4].

As there was no showing in the instant case that Stewart arrived at the rest room before French would have had time to depart, the hearing court's finding that Stewart's testimony would not have helped movant at the jury trial is not clearly erroneous. Movant's complaint in his sixth point about defense counsel's failure to call Stewart as a witness at the jury trial is without merit.

■■■ The other complaint about defense counsel in movant's sixth point is that counsel failed to "investigate, interview, subpoena or call as a witness Dr. George Hickey, even though [movant] requested said witness and said witness was available, when Dr. Hickey would have testified that he treated [movant] for medical problems prior to the alleged altercation, and that [movant] was not physically capable of the actions which the State's alleged eyewitness ... French testified to at trial, when said testimony on the part of Dr. Hickey would have therefore discredited the testimony of the State's only · eyewitness and would have created a substantial likelihood that the result of the trial would have been an acquittal or otherwise more favorable to [movant]." [2]

Movant's complaint about defense counsel's failure to call Dr. Hickey as a witness at the jury trial was set forth in paragraph 8(g)5 of movant's second amended motion to vacate, which alleged Dr. Hickey would have testified he treated movant for "middorsum and lower lumbar-sacral Vertebrae" from March, 1984, to 1986, and that movant was not capable of the assault described by witness French at trial.

Movant testified in the hearing court that Dr. Hickey took care of him "several years." Movant recounted, "I got my back injured, I was laid up for about a year and a half, I couldn't hardly walk, and I was in and out the bed ... and he would treat me

for that." Movant avowed he told defense counsel about Dr. Hickey before trial. According to movant, he was too weak to pick up Meyers "and slam his head into a urinal."

Movant called defense counsel as a witness in the hearing court, but neither movant's lawyer nor the prosecutor asked defense counsel whether movant had ever informed defense counsel about the alleged back injury or about Dr. Hickey.

Dr. Hickey did not testify at the jury trial or in the hearing court.

The hearing court made no finding as to whether movant, prior to the jury trial, informed defense counsel about the alleged back injury or about Dr. Hickey, or whether movant asked defense counsel to subpoena Dr. Hickey to testify at the jury trial. The only finding by the hearing court regarding the alleged injury was: "Movant testified concerning some back problems he was having at the time of the alleged altercation but testified that he offered the same testimony at his trial."

The hearing court was not, of course, obliged to believe movant's testimony about his "back problems" and Dr. Hickey. *Thomas v. State,* 759 S.W.2d 622, 623[2] (Mo.App.1988); *Mountjoy,* 750 S.W.2d at 474[10]. The hearing court was, however, required to make findings of fact and conclusions of law on all issues presented. Rule 27.26(i); *Fields v. State,* 572 S.W.2d 477, 483[3] (Mo.banc 1978).

As the hearing court made no finding as to whether movant told defense counsel about the alleged injury or about Dr. Hickey, or whether movant asked defense counsel to subpoena Dr. Hickey for the jury trial, the hearing court's denial of relief must be reversed so far as those issues are concerned and the cause must be remanded to the hearing court for findings on those issues. *Newman v. State,* 751 S.W.2d 93, 99–100[9] (Mo.App.1988). If the hearing court finds that movant did not in fact have

2. In the argument that follows the sixth point movant complains about defense counsel's failure to "adequately interview and question at trial Edward Little." Little is not mentioned in the sixth point. Appellate review will be made

only of matters raised in the points relied on in the brief. *State v. Hanson,* 587 S.W.2d 895, 903[19] (Mo.App.1979); *State v. Hodges,* 575 S.W.2d 769, 773[8] n. 1 (Mo.App.1978).

any physical disability at the time of the alleged assault, or if the hearing court finds that movant failed to inform defense counsel about the alleged injury and Dr. Hickey, the hearing court shall deny relief. If the hearing court finds that movant did tell defense counsel about the alleged injury and Dr. Hickey, the hearing court shall determine whether defense counsel's failure to present Dr. Hickey as a witness at the jury trial amounted to ineffective assistance.

█ Movant's seventh point pleads he was denied effective assistance of counsel at the jury trial in that defense counsel failed "to obtain or review medical records of the alleged victim, because a review of said medical records would have revealed an available expert medical witness who could have testified that the alleged victim's injuries were consistent with a blow to a hard object such as a wall or floor, and this testimony was consistent with and supportive of [movant's] own testimony that the alleged victim hit his head on the floor."

At the outset of the jury trial defense counsel told the trial court that some two weeks earlier the prosecutor had announced his intention to obtain "certain medical records" by court order from two hospitals where Meyers had been treated for his injuries. Defense counsel stated he had not received the records, consequently he moved that they be suppressed as evidence. The prosecutor responded that the records had been in his office the past week and available for defense counsel's examination. Defense counsel replied that he had never been notified by the prosecutor that the records were there.

The trial court found no willful denial of access to the records on the part of the prosecutor. The records were made available to defense counsel for examination during the lunch hour.

Later, when the prosecutor offered the records in evidence, the prosecutor inquired whether there was any prejudice so that he could "take an opportunity to correct it." Defense counsel stated, "As it stands right now there is no prejudice." The trial court

noted that the lunch recess had lasted "about two hours."

On the subject of whether defense counsel was guilty of ineffective assistance in failing to examine the medical records prior to trial, we note that Michael G. Knapp, the emergency room physician at the hospital to which Meyers was initially taken, testified at trial that Meyers was unconscious on arrival. Knapp, a doctor of osteopathy, explained that a "CAT scan" of Meyers' head revealed evidence of bleeding in the ventricular cavities, that Meyers had episodes of vomiting indicating a severe concussion, and that Meyers had several episodes of respiratory arrest (cessation of breathing). Knapp was asked by the prosecutor to assume that Meyers had received four to five blows to his head with a fist and "an additional one to three blows of his head up against either the urinal or the wall, a hard surface." The prosecutor asked Knapp whether it was his opinion that Meyers' condition resulted from such blows. Knapp responded: "In regards to simply a fist striking his head and causing the injuries, I would think not. But his head striking another harder surface I would ... those are certainly consistent with the kind of injuries he sustained." Knapp added that the injuries Meyers received created a substantial risk of death.

Defense counsel's cross-examination of Knapp produced this:

"Q   Now you also testified that Mr. Meyers' injuries were consistent with a blow sustained to the head and I'm quoting your words, 'against another harder surface,' is that correct?

A   Um-hum.

Q   Okay. When you say a harder surface, could that mean something along the lines of a wall?

A   Yes.

Q   Or a floor?

A   Certainly.

Q   Is there anything regarding solely what you saw in Mr. Meyers and how he was injured to suggest that he may have been struck repeatedly against such a hard object?

A  No, there was nothing in my exam that indicated that."

Defense counsel testified in the hearing court that the medical records he examined on the day of trial contained an opinion from "Dr. Al–Shathir" that Meyers' injuries were consistent with a blow to a hard object such as a wall or a floor. Defense counsel described Al–Shathir as a neurologist or surgeon specializing in head injuries. Defense counsel stated that had he seen the records prior to trial he would have gotten a statement from Al–Shathir and "most likely asked him to testify regarding his opinion."

Movant asserts defense counsel's failure to examine the records in advance of trial amounted to ineffective assistance in that a timely examination would have enabled movant to present the testimony of Al–Shathir at trial.

The hearing court's findings included this:

"As to ... Movant's ground that the State failed to disclose certain material to ... Movant this also should have been raised on direct appeal and there was no showing in the hearing of this case that the alleged late disclosure in any way prejudiced the ... Movant."

While the finding is directed toward the issue of late disclosure (one of the multitudinous grounds pled in movant's second amended motion to vacate) instead of ineffective assistance of counsel, the finding does demonstrate the hearing court was convinced that the alleged late disclosure did not prejudice movant.

As the State's brief points out, Knapp told the jury that Meyers' injuries were consistent with his head striking a hard surface such as a floor, and nothing Knapp saw suggested that Meyers may have been struck repeatedly against a hard surface. There has been no showing that Al–Shathir would have supplied any testimony more favorable to movant than that.

In addition to finding that the alleged late disclosure of the medical records did not prejudice movant, the hearing court made a general finding that movant had failed to carry his burden of proving that any alleged inaction by defense counsel prevented movant from presenting evidence that would have been helpful at trial.

The requirement that the hearing court make findings of fact and conclusions of law on all issues presented is satisfied if the findings and conclusions are adequate to provide meaningful review on appeal. *McDonald v. State*, 758 S.W.2d 101, 104[2] (Mo.App.1988); *Gill v. State*, 712 S.W.2d 732, 733[4] (Mo.App.1986). While the hearing court did not specifically find that defense counsel was not guilty of ineffective assistance by failing to review the medical records prior to trial, it is evident to us from the findings the hearing court did make, coupled with the evidence discussed above, that the hearing court reached that conclusion. On the record before us, such a conclusion is not clearly erroneous. Movant's seventh point is consequently denied.

Movant's eighth point avers the hearing court erred in denying relief in that movant was denied effective assistance of counsel when defense counsel, without movant's consent, stipulated at trial that if Meyers were called to testify he would testify he had "no memory of the events of January 13th, 1986" (the date of the alleged assault). Movant maintains Meyers' injuries were to his head, consequently the stipulation virtually assured that the jury would find Meyers had suffered a protracted or permanent loss of memory and, therefore, a serious physical injury. That being so, says movant, the stipulation "was virtually equivalent to a guilty plea on an essential element of the charge." [3]

Movant testified in the hearing court that defense counsel never obtained movant's consent to the stipulation. Defense counsel testified in the hearing court that he did not recall whether he obtained movant's consent to the stipulation.

We have scrutinized movant's second amended motion to vacate and have found no allegation setting forth the theory of

---

**3.** The infliction of serious physical injury on the victim is an element of the class A felony of assault in the first degree. § 565.050, RSMo Cum.Supp.1984.

relief asserted in movant's eighth point. There is an allegation in paragraph 8(f) of movant's second amended motion averring defense counsel never obtained movant's permission to enter into the stipulation, thereby depriving movant "of his right to confront and cross-examine witnesses against him." However, nowhere in the paragraph is there any averment that the stipulation virtually assured that the jury would find Meyers had suffered a serious physical injury or that the stipulation was virtually equivalent to a guilty plea on an essential element of the charge.

■ A point urged on appeal from a judgment denying relief in a proceeding under Rule 27.26 is not reviewable where it was not raised in the motion in the hearing court and is presented for the first time on appeal. *Maggard v. State*, 471 S.W.2d 161, 162[1] (Mo.1971). Movant's eighth point is, accordingly, denied.

Movant's fifth point, the only one not yet addressed, asserts the hearing court erred by failing to make findings of fact and conclusions of law on seven allegations in movant's second amended motion. The seven allegations will be considered in the order set forth in the fifth point.

1. Defense counsel was ineffective by asking movant about "brushes with the law." This allegation of ineffective assistance was the subject of movant's fourth point. The hearing court's findings were sufficient for our disposition of that point on the merits. No further findings were necessary.

2. Defense counsel was ineffective "for failing to pursue the medical records of the alleged victim." This allegation of ineffective assistance was the subject of movant's seventh point. As noted in our discussion of the seventh point, the hearing court found there was no showing that the alleged late disclosure of the medical records prejudiced movant and also found that movant had failed to carry his burden of proving that any alleged inaction by defense counsel prevented movant from presenting evidence that would have been helpful at trial. Those findings were ade-

quate for our review of movant's seventh point. No other findings were necessary.

3. Defense counsel was ineffective "for failing to request a continuance and to prepare to meet the contents of the alleged victim's medical records." What we have said in the preceding paragraph disposes of this segment of movant's fifth point.

4. Defense counsel failed to preserve for appeal the issue of movant's impeachment with his "prior arrest record" at trial. This allegation of ineffective assistance was the subject of movant's second point. The hearing court's findings were sufficient for our disposition of that point on the merits. No further findings were necessary.

5. Appellate counsel was ineffective "for failing to brief the improper impeachment as plain error." This allegation of ineffective assistance was the subject of movant's third point. The hearing court's findings were sufficient for our disposition of that point on the merits; no further findings were necessary.

6. Defense counsel, without permission from movant, entered into a stipulation at trial that if the alleged victim were to testify he would have no recollection of the events that occurred on the evening in question, thereby waiving movant's constitutional rights to confrontation and cross-examination of the witnesses against him. As noted in our discussion of movant's eighth point, this allegation appears in paragraph 8(f) of movant's second amended motion to vacate. We have searched the hearing court's findings and have discovered no finding regarding this allegation. Inasmuch as the cause must be remanded for findings on the issues regarding Dr. Hickey spelled out in our discussion of movant's sixth point, we direct that the hearing court, on remand, also make findings regarding the allegations of paragraph 8(f) of movant's second amended motion.

■ 7. The State improperly impeached movant at trial with his "arrest record" and "misrepresented to the court statements made by [movant] during direct examination." The first complaint in the preceding sentence was the subject of movant's first point. The hearing court's find-

ings were sufficient for our disposition of that point on the merits. The second complaint does not enlighten us as to what alleged misrepresentations by the prosecutor should have been the subject of findings by the hearing court. We are not required to seine the argument portion of movant's brief in order to discover the meaning of an abstraction presented in a point relied on. *State v. Davis*, 586 S.W.2d 748, 750[4] (Mo.App.1979); *State v. McClain*, 541 S.W.2d 351, 354[6, 7] (Mo. App.1976). The second complaint preserves nothing for review.

The judgment of the hearing court denying relief is affirmed in all respects except as to the issues regarding Dr. Hickey specified in our discussion of movant's sixth point and the issue identified in paragraph "6" of our discussion of movant's fifth point. The judgment is reversed as to those issues only; the cause is remanded to the hearing court solely for findings on those issues and entry of judgment granting or denying relief as shall be appropriate after such findings are made.

GREENE and PREWITT, JJ., concur.