STATE of Missouri,
Plaintiff–Respondent,

v.

Joe McMILLIAN, Defendant–Appellant.

No. 55345.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 19, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 25, 1989.

Application to Transfer Denied
Dec. 12, 1989.

Henry B. Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

A jury convicted defendant Joe Henry McMillian of murder in the first degree and armed criminal action in the Circuit Court of the City of St. Louis. Defendant was sentenced to life imprisonment without possibility of parole on the murder charge and a consecutive eighty years on the armed criminal action charge. We affirm.

The sufficiency of the evidence to convict defendant is not in dispute. Therefore, the evidence is viewed in the light most favorable to the verdict. On the night of August 9, 1987, the victim, Roosevelt Pittman, was in the Depot Liquor Store. Defendant came up behind the victim and said, "I told you I'd catch up with you, brother." Defendant then stabbed him with a knife. The victim ran towards the door while defendant continued to stab him. The victim then staggered to a phone while defendant walked the other way.

Robert Workes and Charles Seaman were both working at the Depot Liquor Store and followed defendant. He ran down an alley and stopped when Workes and Seaman yelled, "Halt, Police!" Defendant then threw the knife over a fence. He was held up against this fence by Workes and Seaman until the police arrived. Police later retrieved the knife.

The medical examiner conducted an autopsy on the victim. He found six stab wounds and two cuts. Several of the wounds were potentially fatal. Victim died from exsanguination.

Defendant raises three points on appeal. The first charges that the trial court erred in allowing certain rebuttal witnesses for the state to testify because they were not excluded from the courtroom during defendant's testimony. The second alleges error in trial court's denial of defendant's motions for mistrial after two occasions which he was seen in handcuffs by jury members. Lastly, he contends that the trial court erred in failing to quash the jury panel because the state engaged in racial discrimination under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

In his first point, defendant contends that the trial court erred in allowing the testimony of two witnesses for the state even though they were both in the courtroom during defendant's testimony. It appears from the record that John Lambus and Conella Jones were indeed present in the courtroom during defendant's testimony.

The decision as to whether witnesses should be excluded from the courtroom is discretionary with the trial court and will not be disturbed unless abused. *State v. Pollard*, 719 S.W.2d 38, 42 (Mo. App.1986). If the trial court is never asked to and does not order witnesses excluded from the courtroom, there is no error in allowing a witness to testify even if that witness remained in the courtroom during trial. *State v. Nelson*, 674 S.W.2d 220, 225 (Mo.App.1984). Furthermore, when such witnesses testify in rebuttal and not on a matter for the state's case in chief, there is no abuse of discretion by the trial court. *State v. Mucie*, 448 S.W.2d 879, 888 (Mo. 1970).

The two witnesses, Conella Jones and John Lambus, were present in the courtroom during defendant's testimony. Both of these witnesses testified to collateral matters concerning the case. Neither witness could offer any evidence about the actual occurrence. Instead, they were used only to address the defendant's credibility.

In addition, there is no evidence before us that defendant invoked the "Rule" of excluding witnesses at the commencement of the trial or that he requested the two witnesses be excluded from the courtroom. Thus, we find no abuse of discretion when the trial court allowed Lambus and Jones

to testify. Defendant's first point is denied.

The second point defendant raises in this appeal alleges that the trial court erred in denying his motion for mistrial after he was seen in handcuffs by jury members on two separate occasions. Defendant contends that this made him appear to be a dangerous man without good reason. He asserts that because no disruptive conduct or any other exceptional circumstances appear on the record, it is reversible error for him to be viewed by jury members wearing handcuffs.

■ A prisoner at trial is entitled to go through the trial without shackles or restraints unless good cause is shown. *State v. Boyd,* 256 S.W.2d 765 (Mo. banc 1953). His reliance on *Boyd* is misplaced. The defendant was not restrained during trial and on the two occasions when the defendant was seen with handcuffs, it was at recess. This procedure is standard when the defendant is being escorted from the courtroom.

The request for a mistrial was properly refused. "The declaration of a mistrial is a drastic remedy, and the power of the trial court in this respect 'should be exercised only in extraordinary circumstances.'" *State v. Young,* 701 S.W.2d 429, 434 (Mo. banc 1984) citing *State v. Camper,* 391 S.W.2d 926, 927–928 (Mo.1965).

■ It has long been recognized in this state that "a brief, inadvertent exposure of the jury of a handcuffed defendant while he is being taken from one place to another does not deprive defendant of a fair trial." [Citations omitted] *State v. Crawford,* 539 S.W.2d 633, 635–636 (Mo. App.1976). Furthermore, after defendant's first objection to this incident, the court inquired of the venire as to any possible prejudices.

The Court: Before you do that, ladies and gentlemen, I have a question for you. Is there anyone in the group here, the venire, that would be influenced in any way by the fact that the defendant may have not been able to make bail, and has been retained in custody for that reason? And you are instructed that that is not a factor to which you should attach any weight whatsoever. But I need to know if there is anyone here who would attach any kind of weight to that fact, assuming it were true? Is there anyone in the box? Anyone in the back? Did you all hear my question?

Alright, let the record reflect no response. There is no complaint that the defendant was restrained in any way while the trial was in progress. The trial court correctly inquired of the jury following the objection by defendant. "This action was a sound exercise of discretion for the purpose of determining whether or not the incident had made any impression on the jurors." *State v. Crawford, supra* at 635–636. Defendant's second point is denied.

In his third point, defendant contends that the trial court erred in denying his motion to strike the jury panel after the state used five of its seven peremptory challenges to remove five persons of the same race from the panel. He contends that the state's strikes were racially motivated and the reasoning behind them purely pretextual, therefore denying him his rights to due process and equal protection under the holdings in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987).

■ *Batson* has been interpreted in Missouri by the *Antwine* decision. In *Antwine,* the court held that, along with the three part *Batson* test for a *prima facie* case of discrimination, the court must consider the prosecutor's explanations given for strikes. This is part of the process of determining if the *prima facie* case is established. The court said that jury selection is not an exact science and is very subjective in nature. Many background facts are to be relied upon. *Antwine, supra,* 743 S.W.2d at 64. The standard of review in such instances is that the findings of the trial court are not to be set aside unless they are clearly erroneous. *Id.* at 66.

The victim in this case was black. Defendant is black. The witnesses at the

scene were white. The pool of venirepersons from which the parties peremptory strikes were made consisted of twenty-seven persons. Seventeen of the twenty-seven were black. The state peremptorily struck five black and two white venirepersons, while defendant struck four black and three white venirepersons. The sitting jury, then, consisted of eight blacks and five whites (including one black alternate).

■ After defendant objected to the jury panel, the prosecutor proceeded to explain his strikes to the court. He stated he struck venireperson No. 588, a black woman, because of her equivocation in regard to her ability to follow the court's instructions. Venireperson No. 578, a white man, was stricken for the same reasons, as was venireperson No. 197, a white woman, eligible for the role of alternate. Venireperson No. 343, a black woman, was stricken because of her displeasure with the length of voir dire. She expressed this by making a personal remark in response to a remark made by the court. Venireperson No. 38, a black woman, was stricken because her responses to questions exhibited a lack of intelligence. Venireperson No. 254, a black woman, was stricken for similar reasons. She did not know whether the rape trial in which she sat as a juror was a criminal trial or not. Finally, venireperson No. 106, a black man, was stricken after an unsuccessful motion to strike for cause. His humorous responses during voir dire indicated that he was a defendant in a murder trial previously and was acquitted. We find that these reasons given by the state for its strikes are sufficiently neutral. Additionally it is to be noted that white jurors were stricken by the state for similar reasons, and defendant used four of its peremptory strikes on black venirepersons.

■ A review of the record reveals that sixty-two percent of the final thirteen jurors were black. We have previously held that under *Batson* a black defendant could not complain that he was denied any equal protection when the jury was forty-two percent black. *State v. Crump,* 747 S.W.2d 193, 195–196. We find no error in trial court's refusal to grant the motion to quash the jury panel.

Judgment affirmed.

CRANDALL and KAROHL, JJ., concur.