**STATE of Missouri, Respondent,**

v.

**Donald L. SMITH, Appellant.**

**No. WD 55389.**

Missouri Court of Appeals,
Western District.

March 30, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 1, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Kent Denzel, Asst. State Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before: SPINDEN, P.J., and EDWIN H. SMITH and RIEDERER, JJ.

EDWIN H. SMITH, Judge.

Donald L. Smith appeals the circuit court's judgment of his jury conviction of first degree statutory sodomy, § 566.062.[1] He was sentenced as a prior offender, pursuant to § 557.036, to life imprisonment in the Missouri Department of Corrections.

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in precluding his cross-examination of T.G., the victim, regarding whether she lied under oath in her deposition. In Point II, he claims that the trial court erred and abused its discretion in overruling his motion for a mistrial after jurors observed him being escorted from the courtroom in handcuffs.

We affirm.

### Facts

T.G. was born on September 4, 1984. On July 12, 1988, T.G.'s mother, C.R., married the appellant, who is not T.G.'s biological father.

The record reflects that beginning at birth, T.G. had eczema, or dry skin, such that lotion had to be applied to her skin frequently. In the spring of 1996, when T.G. was eleven years old and in the sixth grade, the appellant began applying lotion to her wrists, arms, and legs. He also applied lotion to her "private parts" and "in [her] vagina," where she did not need the lotion. This usually occurred after T.G. returned home from school and before her mother arrived home from .work. When applying the lotion, the appellant told T.G. that he was trying to heal her dry skin.

During the spring of 1996, the appellant would undress T.G., tell her to lie down on her bed, and put a pillow over her face. Then he would touch her and "put his penis in [her]." When she protested and asked him to stop, he would tell her that he would be done in a minute. This con-

1. All statutory references are to RSMo 1994, unless otherwise indicated.

tinued throughout the summer of 1996 and happened "a lot."

When T.G. was twelve and in the seventh grade, the appellant began performing oral sex on her by "us[ing] his tongue on [her] private part" in addition to touching her and having sexual intercourse with her. On one occasion, when T.G.'s friend was spending the night with her, the appellant took T.G. to the bathroom and touched her "private parts" with his fingers. T.G. told him to stop in a loud voice. He told her that if she woke up her friend, she would be in trouble. On another occasion, when T.G. was ill, the appellant put a thermometer in her mouth and under her arm. He then told her that the thermometer was not working in those places and placed it in her "private part." On some occasions the appellant would offer to take T.G. places or let her do things if she would let him touch her first.

On March 7, 1997, after arriving home from the movie theatre, T.G. told her mother that she had something to tell her. At that moment, the appellant arrived home. T.G. and her mother then left the house to drive to a convenience store. As they were driving to the store, T.G. told her mother that the appellant had been touching her "down there." After leaving the convenience store, C.R. drove T.G. to the house of R.M., one of C.R.'s close friends. C.R. told R.M. what T.G. had told her in the car. R.M., who worked on a contract basis for the Missouri Department of Social Services, Division of Family Services (the DFS), advised C.R. to make a hot-line call to report T.G.'s allegations, which she did. T.G. stayed at R.M.'s house that night and for a couple of nights thereafter. On or about March 8, 1997, C.R. reported T.G.'s allegations to the police.

On March 20, 1997, T.G. underwent a SAFE examination performed by nurse practitioner Robin Murphy. Murphy reported that T.G. had scarring of her hymen and an enlarged opening for her age. According to Murphy, the enlarged opening of T.G.'s hymen was caused by some sort of trauma directly to the hymen.

The appellant was charged by information in the Circuit Court of Buchanan County, Missouri, with one count of first degree statutory sodomy, § 566.062. On November 17, 1997, the State filed an amended information charging the appellant with one count of first degree statutory sodomy, § 566.062, and alleging that he was a prior offender under § 558.016 in that he had previously pled guilty to one count of attempted burglary in the second degree.

Sometime after the charges were filed, the appellant's trial counsel deposed T.G. At the deposition, counsel asked T.G. whether she had ever allowed a boy to go up her shirt or down her pants, to which she responded that she had not. Sometime thereafter, while still being deposed, T.G. informed the attorneys that she had lied in her response to these two questions.

The case went to trial on November 19, 1997. After the jury was selected but before it was sworn in, the court recessed for lunch. Upon returning from the recess, defense counsel informed the court that the appellant had informed her that some of the jurors observed him being escorted from the courtroom in handcuffs and moved for a mistrial. Defense counsel put forth no other evidence to show that jurors actually observed the appellant in handcuffs. The trial court denied the appellant's motion.

On cross-examination of T.G., the appellant's trial counsel asked her whether she remembered his asking her about her boyfriend in her deposition. The State objected to this question. Upon approaching the bench, defense counsel informed the court that he merely wanted to ask T.G. whether she lied during her deposition and would not ask her about the subject matter of the related questions or her answers thereto. The trial court sustained the State's objection, finding that the testimony which the appellant was attempting to elicit was not relevant to the prosecution and was inad-

missible. The jury found the appellant guilty of one count of first degree statutory sodomy, § 566.062.

On December 15, 1997, the appellant filed a motion for judgment of acquittal or in the alternative for a new trial, which was denied by the trial court on January 16, 1998. On January 16, the trial court sentenced the appellant as a prior offender, pursuant to § 557.036, to life imprisonment in the Missouri Department of Corrections.

This appeal follows.

## I.

■ In Point I, the appellant claims that the trial court erred in precluding the cross-examination of T.G., the victim, regarding whether she lied under oath in her deposition because in doing so he was denied his right to a fair trial and due process in that this evidence went to her credibility and the credibility of a witness is always relevant and admissible. Specifically, the appellant claims that he should have been allowed to ask the victim whether she lied in her deposition, without discussing the nature and circumstances of her alleged lying. The State contends that the trial court did not err, as the appellant claims, because the alleged lie related to a collateral matter to the prosecution in that it related to evidence that was inadmissible under the rape shield statute, § 491.015. Thus, the issue for us to decide is whether the mere fact that a witness lied under oath in a deposition, without regard for the nature and circumstances of the lie, is, as a matter of law, admissible at trial in order to impeach that witness' credibility.

■ We agree with the appellant that, as a general proposition, the credibility of witnesses is always a relevant issue in a lawsuit. See State v. Strughold, 973 S.W.2d 876, 891 (Mo.App.1998) (holding that "[a]nything that has the legitimate tendency of throwing light on the accuracy, truthfulness, and sincerity of a witness is proper for determining the credibility of the witness"). However, attacks on a witness' credibility in criminal proceedings are subject to limitations, and not every attack will be allowed. State v. Russell, 625 S.W.2d 138, 141 (Mo. banc 1981).

The scope of cross-examination and the determination of matters of witness credibility are largely within the discretion of the trial court. State v. Dunn, 817 S.W.2d 241, 245 (Mo. banc 1991), cert. denied, 503 U.S. 992, 112 S.Ct. 1689, 118 L.Ed.2d 403 (1992). "Among the reasons for permitting trial judges wide latitude for the purpose of imposing reasonable limits on cross-examination are concerns about prejudice, confusion of the issues, and interrogation that is only marginally relevant." Id. The trial court does not abuse its discretion when excluding offers of impeachment on immaterial or collateral matters. State v. Taylor, 486 S.W.2d 239, 244 (Mo.1972), citing State v. Miles, 412 S.W.2d 473, 476 (Mo.1967). State v. Taylor, 944 S.W.2d 925, 935 (Mo. banc 1997). An abuse of discretion occurs when the ruling of the trial court " 'is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.' " State v. Williams, 976 S.W.2d 1, 2 (Mo.App.1998) (citation omitted).

■ During the appellant's deposition of T.G., his trial counsel asked her whether she ever let a boy "go up your shirt" or "down your pants," to which she responded that she had not. Sometime thereafter, while still being deposed, the victim informed the attorneys that she lied in her response to these two questions. It is this "lie" about which the appellant wanted to cross-examine the victim in order to attack her credibility. In doing so, however, he asserts that he did not want to go into the circumstances or nature of the lie, but only wanted to question her as to whether she had, in fact, lied in her deposition. It is his contention that because he did not want to go into the nature or circumstances of the lie, but just the fact she lied,

that his attempted cross-examination was proper. If we were to accept this contention, it would mean that any lie, regardless of the admissibility, relevancy, or remoteness of the subject matter on which the witness lied, would be admissible, as a matter of law, as a permissible attack on witness credibility. Clearly, this is not and should not be the law.

We believe that the holding in *State v. Madsen*, 772 S.W.2d 656 (Mo. *banc* 1989), is instructive on the issue at hand. In *Madsen*, the defendant was convicted of forcible rape, § 566.030, and forcible sodomy, § 566.060. *Id.* at 657. On appeal, he claimed that the trial court abused its discretion in restricting the scope and extent of his cross-examination of the victim. *Id.* at 661. The victim originally told the police that she had not had sexual relations with any person other than the defendant within 24 hours of the assault. In her first deposition, she extended the time to 48 hours, and in her second deposition, she admitted that these statements were untrue. *Id.* at 661. The *Madsen* court held that because the evidence relating to the victim's statements did not fall within one of the exceptions of the rape shield statute, § 491.015,[2] such evidence was not relevant or admissible and could not be used to attack her credibility. *Id.* at 661.

■ Under the rape shield statute, evidence of specific instances of a victim's prior sexual conduct is admissible only if it falls within the specific exceptions set out in the statute and then only to the extent that the court finds it relevant to a material fact or issue in the case. § 491.015; *State v. Hale*, 917 S.W.2d 219, 221 (Mo. App.1996). The statute creates the presumption that evidence of the victim's prior sexual conduct is irrelevant to prosecutions under chapters 566 and 568, RSMo. *State v. Culkin*, 791 S.W.2d 803, 808 (Mo. App.1990). Because such evidence is inadmissible, it necessarily is of no material significance in the case and is not pertinent to the issues developed and, thus, is irrelevant and collateral. *State v. Williams*, 849 S.W.2d 575, 578 (Mo.App. 1993).

Evidence regarding whether T.G. had ever allowed a boy to go up her shirt or down her pants is evidence of specific instances of her prior sexual conduct which did not fall within the four exceptions of the rape shield statute. § 491.015. Thus, according to *Madsen*, this evidence was irrelevant and inadmissible such that the trial court did not err and abuse its discretion in preventing the appellant from inquiring whether the victim lied in her deposition concerning these matters.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred and abused its discretion in overruling his motion for a mistrial after jurors allegedly observed him being escorted from the courtroom in handcuffs during the trial, thereby denying him his

---

**2.** Section 491.015, the rape shield statute, provides, in pertinent part, as follows:

1. In prosecutions under chapter 566, RSMo, or prosecutions related to sexual conduct under Chapter 568, RSMo, opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:

(1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or

(2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

(3) Evidence of immediate surrounding circumstances of the alleged crime; or

(4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

right to a fair trial and due process. The appellant alleges that, following a court recess, the court marshal escorted him from the court in handcuffs in view of some of the jurors, implying to them that he was a dangerous person. The State claims that the trial court did not abuse its discretion in refusing to declare a mistrial because: (1) there was no evidence that any of the jurors actually observed the appellant in handcuffs, and (2) even if some jurors did, a juror's brief, inadvertent exposure to a defendant who is in handcuffs is not a sufficient ground for a mistrial.

■ Granting a mistrial is a drastic remedy, to be utilized only when there is grievous error which cannot be remedied otherwise. *State v. Sanders*, 903 S.W.2d 234, 238 (Mo.App.1995). Because the trial court is in a better position to determine any prejudicial effects from an alleged error, the granting of a mistrial is within its sound discretion. *State v. Shelton*, 779 S.W.2d 614, 616 (Mo.App.1989). An abuse of discretion occurs when the order of the court is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration. *Williams*, 976 S.W.2d at 2.

■ During the trial, following a lunch recess, defense counsel advised the trial court that the appellant had informed her that some of the jurors had observed him in handcuffs as he was being escorted from the courtroom at the beginning of the recess. On this basis, she moved for a mistrial, asserting that jurors who had observed him would be prejudiced against him and believe he was guilty, regardless of the evidence. No other showing was made by the appellant that jurors actually observed him being escorted in handcuffs.

■ A bare assertion by defense counsel does not prove itself and is not evidence of the facts presented. *State v. Shannon*, 892 S.W.2d 761, 765 (Mo.App. 1995); *State v. O'Dell*, 684 S.W.2d 453, 468 (Mo.App.1984). As such, the record here is devoid of any proof that jurors actually observed the appellant's being escorted from the courtroom in handcuffs, and we cannot speculate as to whether they did. *Lytle v. State*, 762 S.W.2d 830, 834–35 (Mo.App.1988). Hence, the appellant failed to make the required showing that the jurors actually observed him being escorted from the courtroom in handcuffs, entitling him to a mistrial. *State v. Clements*, 849 S.W.2d 640, 646 (Mo.App.1993).

■ Even if jurors did observe the appellant's being escorted in handcuffs, generally the mere fact that a juror has seen a criminal defendant in handcuffs is not a sufficient ground for mistrial. *Shelton*, 779 S.W.2d at 616. This is so because it is a normal and regular, as well as a highly desirable and necessary, practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this. *Lytle*, 762 S.W.2d at 835. Thus, a brief, inadvertent exposure to the jury of a handcuffed defendant does not deprive the defendant of a fair trial and cannot be said to result in prejudice. *Sanders*, 903 S.W.2d at 239; *State v. Edwards*, 714 S.W.2d 786, 789 (Mo.App.1986). As such, even if jurors did briefly observe the appellant in handcuffs, as claimed, we find no prejudice to him from this fact.

For the reasons stated, we find that the trial court did not err in failing to grant the appellant's motion for a mistrial.

Point denied.

## Conclusion

The circuit court's judgment of the appellant's jury conviction of first degree statutory sodomy, § 566.062, is affirmed.

All concur.