Martin ANDERSEN, Respondent,

v.

Anita OSMON and William Osmon, Appellants.

No. WD 66577.

Missouri Court of Appeals, Western District.

March 27, 2007.

William S. Lewis, Trenton, MO, for appellants.

John L. Young, Princeton, MO, for respondent.

Before THOMAS H. NEWTON, Presiding Judge, PATRICIA BRECKENRIDGE, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

On November 17, 2003, a motor vehicle operated by Anita E. Osmon collided with a tractor driven by Martin Andersen on Route B in Harrison County, Missouri. Mr. Andersen subsequently filed a petition for personal injury and property damage against Ms. Osmon. William Osmon, Ms. Osmon's husband, was granted leave to intervene, and Anita E. Osmon and William Osmon, husband and wife, asserted a counterclaim against Mr. Andersen for property damage. The case was tried to a jury on October 24 and 25, 2005. The jury returned a unanimous verdict in favor of the Osmons in the amount of $7,000, assessing one-hundred percent fault to Mr. Andersen and zero fault to Ms. Osmon. Judgment was entered accordingly. Thereafter, Mr. Andersen filed a motion for new trial, and on January 30, 2006, the trial court entered an order granting Mr. Andersen's motion for new trial. The Osmons ("Appellants") bring this appeal.

The motion for new trial filed by Mr. Andersen ("Respondent") alleged, among other things, that the trial court erred in failing to strike venirepersons Jesse Elder (Juror No. 4) and Jennifer Whisler (Juror No. 15) because "both indicated friendship with the Defendants, either socially, family or employment" and "[b]oth expressed difficulty in being impartial and fair." During argument on the motion, Appellant's counsel argued that Ms. Elder "nodded her head, which did not pick up on the record, which I made note on the record, though, raising the question that she would have a problem being partial—being fair and impartial on the jury panel." Counsel further argued that "after the trial, and there's no affidavit other than my own word, I saw I believe it was Ms. Elder discussing the case on this end of the courthouse with Ms. Osmon, or at least they were there discussing, and I think they even hugged."

In its judgment granting the new trial, the court stated its reasons for doing so:

> At trial the court denied plaintiff's request to strike venirepersons Jesse Elder and Jennifer Whisler as the record did not reflect that either potential juror verbally, *or otherwise,* indicated that they could not be fair and impartial.
>
> \* \* \* \* \* \*
>
> However, plaintiff's attorney indicated, during oral arguments on the Motion for New Trial, that the jurors "nodded" affirmatively that they could not be fair and impartial and that one of the jurors "hugged" the defendant in the hallway after the verdict was rendered.
>
> This court did not observe the purported nods, but notes were being taken which limited the ability to observe the venire panel at all times. Nor, did the court observe purported "hugging" in the hallway after the verdict. However, this court has always known attorney for the

plaintiff to be truthful with the court and has no reason disbelieve [*sic* ] the assertions.

On this appeal, Appellants claim that the trial court abused its discretion because no evidence was presented to establish misconduct, bias, or prejudice on the part of either of the two jurors sufficient to afford a jurisdictional basis to award a new trial.

■■■ We review a trial court's ruling on a motion for new trial for abuse of discretion:

> Rule 78.01 permits the trial court to grant a new trial of any issue upon good cause shown. The trial court has wide discretion in ruling on a motion for a new trial and is vested with substantial discretion over matters of fact in ruling on new trial motions. Appellate courts apply a rule of greater liberality in upholding a trial court's action in sustaining a motion for a new trial, than in denying it. Thus, when reviewing the grant of a new trial, this court is to indulge every reasonable inference in favor of the trial court and may not reverse unless there has been a clear abuse of discretion. A trial court has abused its discretion when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.

*Damon Pursell Constr. Co. v. Mo. Highway & Transp. Comm'n,* 192 S.W.3d 461, 469 (Mo.App. W.D.2006) (internal citations and quotations omitted). The qualifications of jurors are "questions of fact and matters affecting the determination of issues of fact," so they fall within the trial court's wide discretion regarding motions for new trial. *Holtgrave v. Hoffman,* 716 S.W.2d 332, 334 (Mo.App. E.D.1986) (internal quotation omitted). The Court of Ap-

peals has no right to go beyond what is clearly expressed in an order granting a new trial and must accept the order at face value. *Simpkins v. Ryder Freight Sys., Inc.,* 909 S.W.2d 683, 686–87 (Mo.App. W.D.1995). "Rule 78.03 requires the trial court to specify the ground or grounds for granting a new trial" in the order. *Id.* at 686. "The trial court's order is the only repository for the court's grounds, thoughts, or reasons for sustaining a motion for new trial." *Id.* at 686–87.

 Respondent's Motion for New Trial contains twelve separate allegations of error by the trial court, but the court's order is based solely on the first paragraph, which addresses juror qualifications. "When a trial court grants a new trial on a specified basis, that ruling constitutes an overruling of all other grounds asserted by the movant in its motion for a new trial." *Id.* Thus, the court's ruling based solely on juror qualifications constitutes an overruling of the other eleven grounds specified in the Motion.

"On appeal from an order granting a new trial for a specific reason the burden is on appellant to show that the court erred in sustaining the motion upon the ground specified.... Respondent, in defending the action of the court in sustaining the motion, is not confined solely to the ground specified by the court, ... but may show that notwithstanding the motion is not sustainable on the ground specified, there are other grounds alleged in the motion for new trial under which the motion should have been sustained."

*Coffer'v. Paris,* 550 S.W.2d 915, 917 (Mo. App. W.D.1977) (quoting *Overton v. Tesson,* 355 S.W.2d 909, 913 (Mo.1962)) (emphasis omitted). The respondent has the burden to show if other grounds in the motion are sufficient to grant a new trial. *Kuzuf v. Gebhardt,* 602 S.W.2d 446, 451

(Mo. banc 1980). Although Respondent asserts that the trial court could have granted the new trial on any of the other eleven grounds alleged, he does not provide any support and, therefore, fails to sustain his burden. Thus, our review is limited to the grounds specified in the order granting a new trial.

Appellants first argue the procedural issue that the trial court did not have jurisdiction to grant a new trial based on the grounds it did because neither of Respondent's claimed reasons for bias is stated in the Motion for New Trial. We need not address the issue because, as discussed *infra,* even assuming the motion was sufficient to raise the issue, the court erred in granting the new trial.

Next, Appellants argue generally that there was no evidence to support the trial court's decision to grant a new trial based on the existence of juror bias and that the trial court improperly relied solely on Respondent's attorney's unsubstantiated assertions.

Respondent alleged that Jurors Elder and Whisler each indicated during voir dire that they had a friendship with Appellants and that they "expressed difficulty in being impartial and fair." There is no elaboration in the Motion itself as to how this "difficulty" was "expressed." Respondent asserted generally that he was prejudiced by the trial court's error of not striking Jurors Elder and Whisler because Appellants were from Harrison County and Respondent was from another state.

 Appellants argue that there was no evidence sufficient to show prejudice on the part of either of the challenged jurors. Prejudice is not shown where there is "no claim or suggestion from the record that any of the jurors selected was prejudiced to the extent that he or she should have been removed for cause." *Carter v. Tom's*

*Truck Repair, Inc.*, 857 S.W.2d 172, 178 (Mo. banc 1993).

As to Juror Whisler (No. 15), Respondent asserted only that she expressed difficulty in being fair and impartial as a result of her "friendship" with Appellants. As to Juror Elder (No. 4), Respondent argued that she affirmatively nodded her head during voir dire indicating that she would be biased by her "friendship" with Appellants, and that he witnessed Juror Elder and Ms. Osmon engaged in conversation after the trial and thought that he recalled them hugging.

■■■ The qualifications of a juror are based on the entire voir dire examination, not on any single response. *Ham v. State*, 7 S.W.3d 433, 441–42 (Mo.App. W.D.1999). "A venireperson is not absolutely disqualified because she is personally or professionally acquainted with a party." *Sheffler v. Arana*, 950 S.W.2d 259, 266 (Mo.App. W.D.1997). "The critical question . . . is whether the challenged venireperson indicated unequivocally her ability to evaluate the evidence fairly and impartially." *Id.* If the trial court is convinced that a juror can be fair and impartial after consideration of the entire voir dire examination, then the court is not required to disqualify a juror merely because a certain response, when considered alone, raises the bare possibility of prejudice. *Ham*, 7 S.W.3d at 441–42.

■■■ Although Respondent does not expressly make the argument, it appears that his contention is that Jurors Elder and Whisler's responses regarding impartiality were equivocal. He refers to the fact that many of the statements made during voir dire were inaudible and, therefore, not picked up on the record, apparently claiming that the inaudible responses may have been responses indicating bias. However, in addition to their inaudible responses,[1] both jurors indicated verbally that they *could* be fair and impartial despite their acquaintances with Appellants. Ms. Whisler indicated that she heard about the accident because her husband is friends with Appellants. When asked if this would affect her ability to serve, she answered, "No." A short time later, Ms. Elder indicated that she had heard about the accident through work because she and Appellant Anita Osmon both worked at Wal–Mart. Ms. Elder clearly answered "probably not" when asked whether this would affect her ability to serve as a juror.

■■■ Expressions such as "I believe I could" are common terms for definitive expressions of a person's state of mind and are not equivocations. *Morris v. Spencer*, 826 S.W.2d 10, 13 (Mo.App. W.D.1992). Respondent's counsel did not attempt to clarify either of the jurors' non-verbal responses to show any possible bias during questioning.[2] "The burden is on the party

1. The record reflects that there was "no audible response" by both Jurors Elder and Whisler when questioned by Respondent's counsel as to whether their ability to serve would be affected by their acquaintance with Appellant William Osmon.

2. Counsel's only follow-up to Ms. Whisler's inaudible response regarding any possible bias from knowing Appellant through her husband was to ask what her husband does for a living. Later, counsel affirmed that Ms. Whisler's acquaintance with Appellants was through her husband as he was going through the rows individually, again asking no follow-up questions. Respondent's counsel also made no comment and asked no follow-up questions about Ms. Elder's inaudible response to whether she would be affected by her life-long acquaintance with Appellant. When Ms. Elder indicated a second time that she knew Appellant Anita Osmon from work and living in the same town, counsel did not ask her any further questions about her ability to be impartial. He stated only, "Okay. And the fact you worked with her and know her— Okay," and moved on to the next juror.

proposing the strike to probe into any area on voir dire which he considers grounds for disqualification." *State v. Ervin,* 835 S.W.2d 905, 917 (Mo. banc 1992). It does not appear from counsel's reaction to either Ms. Elder's or Ms. Whisler's responses that he believed that any of their responses indicated bias at that time. The trial court was obligated to consider all responses as a whole in determining juror competency. *Ham,* 7 S.W.3d at 441–42.

In the course of the determination of strikes for cause after voir dire, there was a lengthy discussion as to whether either Ms. Elder or Ms. Whisler had indicated that the existence of a prior relationship with Appellants would prevent them from being fair and impartial. During that discussion, the trial judge indicated that he had notes indicating cause to strike three other jurors but that his notes as to Ms. Elder[3] and Ms. Whisler[4] did not indicate any bias. There was no mention at any time by either the court or the attorneys as to whether Ms. Elder nodded her head in response to any question. The only suggestion of any movement of Ms. Elder's head was when they turned to the record. The clerk reviewed the record and stated, "The response is obviously not a verbal response, because it cannot be heard. She shook her head." Respondent's counsel made no response to this assertion. The judge then said, specifically discussing this exchange in the record with Ms. Elder, "You know, I—I always try to watch people and look at their verbal cues, but some-

times those verbal—or non-verbal cues are as—as important as the verbal. And I—I just do not show anything, and these are my notes I'm looking at." The court concluded, "I realize there's a problem here, but I—The record just does not reflect the for-cause." The trial court was very consistent in stating that there was no indication of any bias as to either juror and that it makes a point to try to look at non-verbal cues but did not see any cues from Ms. Elder indicating possible bias.

The trial court stressed several times that it had taken notes on both Ms. Elder and Ms. Whisler and that there was no indication of bias for either of them. In addition to his comments as discussed above, the trial judge made a final response to Respondent's counsel's claim of prejudice by leaving Jurors Elder and Whisler on the panel. The court stated, "[M]y problem is, is that ... up here, everyone knows everyone, and so I just—I try to take very good notes and leave it to the parties to look at and—and get to will it affect. And I just—I do not have that in my notes." When Respondent's counsel indicated that his notes appeared to be different than everyone else's, the court turned to the record, as discussed above. The court's original decision to deny Respondent's request to strike the venirepersons appears to have been arrived at after an in-depth consideration of all available information at the time, including the court's and both attorneys' notes regarding the entire voir dire examination, as

**3.** As to Ms. Elder, the court first stated, "I have her down in my notes, and both times the bottom line that she said was—is no effect." After listening to Respondent's counsel's comments on Ms. Elder, he stated again that "I did not get anything to the point where she said it would affect, and I do have notes on her. So why don't we come back to that, and if we have to listen to the record, we have to listen to the record."

**4.** As to Ms. Whisler, the court stated, "My notes don't reflect that [she] ever said something that—that—that [she] couldn't be fair and unbiased. There is some acquaintance there, but ..." Appellants' counsel confirmed that neither he nor his assistant had Ms. Whisler in their notes as being biased. There is no other discussion in the record solely as to Ms. Whisler.

well as the record itself. It does not appear that a reasonable person could have come to a different conclusion.

During the hearing on the Motion for New Trial, Respondent's counsel claimed for the first time that Ms. Elder had nodded during voir dire, indicating an existence of bias, but that this did not pick up on the record. As indicated, however, based on the record, there was, in fact, no discussion as to any "nod" during the strikes for cause, nor at any other time prior to the motion hearing. Respondent's counsel never made any assertions more specific than that the jurors "indicated" that they were friends, that it would be a problem, or that they would have a hard time being unbiased.

Respondent's counsel also asserted that he had observed Juror Elder and Appellant Anita Osmon engaged in conversation after the trial and that he thought they even hugged. During argument on the motion, counsel stated:

I also found it a little bit interesting that after the trial, and there's no affidavit other than my own word, I saw I believe it was Ms. Elder discussing the case on this end of the courthouse with Ms. Osmon, or at least they were there discussing, and I think they even hugged.

As can be seen from the statement, counsel was not sure whether it was Juror Elder that was speaking with Appellant Anita Osmon, whether they were discussing the case, or whether they even hugged. This is not only a bare, but also an ambiguous, assertion of counsel that is not evidence and proves nothing. *State v. Smith*, 996 S.W.2d 518, 523 (Mo.App. W.D.1999). ▆▆▆▆ At the motion hearing, counsel relied on his "word" as an officer of the court. Bare assertions by counsel do not prove themselves and are not evidence of the facts presented. *Smith*, 996 S.W.2d at 523. "Arguments and statements of coun-

sel are not evidence of the facts presented." *State v. Dowell*, 25 S.W.3d 594, 609 (Mo.App. W.D.2000) (quoting *State v. Coleman*, 954 S.W.2d 1, 6 (Mo.App. W.D. 1997)). Counsel's statements regarding the hug do not constitute substantial evidence to show the occurrence of the hug itself, let alone the existence of any prejudice as a result, so Respondent failed to fulfill his burden in proving the allegation of the hug.

At the conclusion of the arguments on Respondent's Motion, the court made the following comments:

I think the—the—the error of No. 1 is what causes the Court so much—the most concern. The problem we have is Ms. Elder, if she was the person that nodded—You know, I'm making notes when they're—during voir dire, and I don't always look up. I—I look up once in a while to look at jurors to kind of see if they're paying attention, but I never saw her nod. You know, and when you listen to the transcript, she doesn't say anything about it.

And so, I mean, *if you look at a cold record, there's nothing to indicate that she has a bias,* but what I'm hearing Mr. Young say now is, is that Ms. Elder hugged—I assume it would be Ms. Osmon, not Mr. Osmon, after the . . .

Well, I suppose in criminal cases, sometimes you—you—you have jurors that will hug one of the relatives, more out of sympathy than—than anything else, not so much that they know them or that they're—*But I do have that indication from Mr. Young that there was a nod, and we do have an indication that there was a hug. And, I mean, I just—I didn't look up when she did or didn't nod, and my notes didn't show anything. But, still,*

*that's a concern when we start to compound all of those.* (Emphasis added).

Thereafter, the trial court entered its order granting a new trial, reiterating its reasons:

> At trial the court denied plaintiff's request to strike venirepersons Jesse Elder and Jennifer Whisler as the record did not reflect that either potential juror verbally, *or otherwise,* indicated that they could not be fair and impartial.
>
> \* \* \* \* \* \*
>
> However, plaintiff's attorney indicated, during oral arguments on the Motion for New Trial, that the jurors "nodded" affirmatively that they could not be fair and impartial and that one of the jurors "hugged" the defendant in the hallway after the verdict was rendered.
>
> This court did not observe the purported nods, but notes were being taken which limited the ability to observe the venire panel at all times. Nor, did the court observe purported "hugging" in the hallway after the verdict. However, this court has always known attorney for the plaintiff to be truthful with the court and has no reason disbelieve [*sic* ] the assertions.

It is clear from the trial court's comments at the time of the hearing and in the order itself that the court relied exclusively on the representations of Respondent's attorney in granting the new trial. It did so with full recognition of the fact that there is nothing in the record that supports counsel's assertions and no additional evidence was presented in support thereof. Respondent did not provide any independent proof of the claims argued by his attorney. As noted *supra,* bare assertions by counsel do not prove themselves and are not evidence of the facts presented. *Smith,* 996 S.W.2d at 523. " 'Arguments and statements of counsel are not

evidence of the facts presented.' " *Dowell,* 25 S.W.3d at 609 (quoting *Coleman,* 954 S.W.2d at 6). Accordingly, Respondent failed to make the required showing to entitle him to a new trial, and it was an abuse of discretion for the trial court to grant a new trial under those circumstances.

The judgment of the trial court granting Respondent's motion for a new trial is reversed, and the case is remanded with instructions to reinstate the jury verdict in favor of Appellants.

All concur.