**STATE of Missouri, Respondent,**

v.

**Jovell L. SWOPES, Appellant.**

**No. WD 71713.**

Missouri Court of Appeals,
Western District.

June 28, 2011.

S. Kate Webber, Kansas City, MO, for appellant.

Shaun J. Mackelprang and Richard A. Starnes, Jefferson City, MO, for respondent.

Before Division One: GARY D. WITT, Presiding Judge, JAMES E. WELSH, Judge and ALOK AHUJA, Judge.

GARY D. WITT, Judge.

Jovell Swopes ("Swopes") was convicted after a jury trial of one count of assault in the second degree, Section 565.060, and one count of armed criminal action, Section 571.015.[1] On appeal, Swopes contends the circuit court plainly erred in refusing to grant Swopes's request for a mistrial after some members of the jury allegedly saw Swopes being restrained by police officers during a break in Swopes's jury trial. We affirm.

## Factual Background[2]

Swopes was charged with firing a weapon at Irvin Dale House at least six times,

---

1. All statutory citations are to RSMo 2000 as updated through the 2010 Cumulative Supplement, unless otherwise indicated.

2. "Defendant does not challenge the sufficiency of the evidence to support his convictions; thus, a brief summary of the ... facts of the case will suffice for our review." *State v.*

hitting him three times (in each of his calves and in his right foot). Specifically, Swopes was charged with one count of assault in the first degree for his conduct that was "a substantial step toward the commission of the crime of attempting to kill or cause serious physical injury to Irvin Dale House," and one count of armed criminal action.

This matter was tried before a jury on September 24–27, 2009. At the conclusion of the trial, the jury found Swopes guilty of the lesser included offense of assault in the second degree and armed criminal action.

The trial court sentenced Swopes as a prior and persistent offender to ten years incarceration for the assault conviction and five years for the armed criminal action conviction. The sentences were to be served concurrently. Swopes now appeals his judgment and sentence.

Further factual details will be outlined as relevant in the analysis section of this opinion.

### Analysis

In his sole Point on appeal, Swopes argues that the trial court "plainly erred in denying Mr. Swopes' motion for a mistrial because Mr. Swopes' appearance in custody before jurors, without good cause, violated his rights to the presumption of innocence, to due process of law, and to trial before a fair and impartial jury."

On appeal, Swopes concedes that we may review his claim only for plain error because he failed to include this claim in his motion for new trial. *State v. Drudge,*

Johnson, 150 S.W.3d 132, 134 (Mo.App. E.D. 2004). Furthermore, "[w]e view the facts in the light most favorable to the verdict." *State v. Allison,* 326 S.W.3d 81, 85 (Mo.App. W.D. 2010).

296 S.W.3d 37, 42 (Mo.App. E.D.2009) (citing Rule 30.20[3]).

This Court recently outlined the applicable standard of plain error review:

"Review of plain error under Rule 30.20 involves a two-step process. First, we must determine if the claim on its face establishes substantial grounds to find that manifest injustice or miscarriage of justice has resulted." *State v. Lewis,* 243 S.W.3d 523, 525 (Mo.App. W.D.2008) (citation omitted). Not all prejudicial error can be deemed plain error. *State v. Calhoun,* 259 S.W.3d 53, 58 (Mo.App. W.D.2008). "Plain error is evident, obvious, and clear error." *Id.* If plain error is evident on the face of the claim, then we may proceed to consider whether or not a miscarriage of justice or manifest injustice will occur if left uncorrected. *Lewis,* 243 S.W.3d at 525. Where no plain error appears on the face of the claim, we should decline to exercise our discretion to review the claim. *Id.*

*State v. Gaines,* 316 S.W.3d 440, 449 (Mo. App. W.D.2010).

■ "The plain error rule is to be used sparingly." *State v. Steele,* 314 S.W.3d 845, 854 (Mo.App. W.D.2010) (quotation omitted). "It must be invoked on a case by case basis, and there must be a sound, substantial manifestation, a strong, clear showing, that injustice or a miscarriage of justice resulted." *Id.*

As it pertains to the jury seeing a criminal defendant handcuffed or shackled during trial, the Missouri Supreme Court stated as follows:

A defendant cannot routinely be visually shackled in the guilt or penalty phase of

**3.** All rule references are to the Missouri Supreme Court rules (2011), unless otherwise indicated.

a criminal trial "unless that use is 'justified by an essential state interest'—such as the interest of courtroom security—specific to the defendant on trial." *Deck v. Missouri,* 544 U.S. 622, 624, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). "Although shackling in the presence of the jury should be avoided if possible, not every incident in which a jury observes the defendant in shackles requires a mistrial." *[State v.] Brooks,* 960 S.W.2d [479,] 491 [Mo. banc 1997] (internal citations omitted). In fact, "brief, inadvertent exposure of the jury of a handcuffed defendant while he is being taken from one place to another does not deprive defendant of a fair trial." *State v. McMillian,* 779 S.W.2d 670, 672 (Mo. App.1989), *citing State v. Crawford,* 539 S.W.2d 633, 635–36 (Mo.App.1976).

*State v. Taylor,* 298 S.W.3d 482, 512 (Mo. banc 2009).

Swopes's claim on appeal fails. To begin, Swopes presumes on appeal that one or more members of the jury *in fact* saw him "in restraint,"[4] but a careful reading of the trial transcript reveals no such objective proof:

> [Defense Counsel # 1]: Your Honor, we just wanted to make a record that during the last recess—I know that an instruction was given to the jurors not to talk, however several of the jurors were seen outside in the hallway. One of the jurors particularly—and I don't remember what number she is. She has got kind of a blue shirt on, and then another juror who I saw in the bathroom and then in the hallway talking on the phone. She is younger and has shorter dark hair and kind of a greenish white top on, Capri pants on, and I know that there

were others around them. I just didn't see specifically any other jurors. In any case, we did also have the defendant being walked out—escorted out by two officers to go to the bathroom, so based on the timing of all of that *it is my assumption that those jurors did see Mr. Swopes being walked out by the officers and so that is concerning to us.*

> THE COURT: Okay. I know that some of the jurors did leave to go down to take a smoke apparently. They are now back up in the jury room and I'm not sure—I mean, are you asking for anything other than to make a record about this?

> [Defense Counsel # 2]: Well Your Honor, I was not aware that they were going to be leaving the jury room.

> THE COURT: We weren't aware they were either, frankly, and should not have.

> [Defense Counsel # 2]: So I, of course, said, 'They are going up to the jury room and you can certainly take him out that way this time,' you know the opposite of what we had been doing when we had the whole panel here. So I saw two jurors getting on the elevator apart from the two she saw. *I don't know how many of them saw him being escorted by the jail guards.*

> [Defense Counsel # 1]: The first request would be, of course, for a mistrial. If that's not granted—

> [Defense Counsel # 2]: Yes, I guess, yes our first request will be for a mistrial. I mean I propose if you wanted to give them some sort of instruction to ignore anything they saw or heard. I don't know if that' going to do it.

---

4. Nothing in the record objectively demonstrates what type of restraints Swopes was wearing, if any, when the jurors in question allegedly saw him. However, because we need not resolve this issue to dispose of the merits of Swopes's claims, we need not be further detained by this factual issue.

THE COURT: Well and I'm going to deny the request for a mistrial. I certainly could make some inquiry, but frankly, I think that that would cause more harm than it would do good. I think, you know, they have obviously seen the guards here. I mean, they don't know they are guards, obviously, and they have seen them in the court room and so I guess short of having to make inquiry of each individual, which I think as I said, would cause more harm than good, I'm not sure what else I can do under these circumstances except that we will do a better job to try to make sure that the juror remain in the jury room unless they are attended by someone from my staff. Alright, is everybody ready to proceed?

[Defense Counsel # 2]: Yes, Your Honor.

(Emphasis added.)

■ "A bare assertion by defense counsel [that jurors saw the defendant being escorted in restraint] does not prove itself and is not evidence of the facts presented." *State v. Smith*, 996 S.W.2d 518, 523 (Mo. App. W.D.1999) (citing *State v. Shannon*, 892 S.W.2d 761, 765 (Mo.App. W.D.1995); *State v. O'Dell*, 684 S.W.2d 453, 468 (Mo. App. S.D.1984)). "As such, the record here is devoid of any proof that jurors actually observed the appellant's being escorted from the courtroom in handcuffs, and we cannot speculate as to whether they did." *Id.* (citing *Lytle v. State*, 762 S.W.2d 830, 834–35 (Mo.App. W.D.1988)). "Hence, the appellant failed to make the required showing that the jurors actually observed him being escorted from the courtroom in handcuffs, entitling him to a mistrial." *Id.* (citing *State v. Clements*, 849 S.W.2d 640, 646 (Mo.App. S.D.1993)).

■ It is true that in this case that the trial court acknowledged that jury members left the confines of the Court's jury room without the knowledge of the trial court or its staff.[5] But these facts do not necessarily translate into the conclusion that the jurors *in fact* saw Swopes handcuffed and/or restrained. And, for whatever reason, Swopes made no record if Swopes *himself* saw any of these jurors while shackled because that would be a better indicator to determine if it in fact happened. Certainly, if Swopes's trial counsel had stated, as an officer of the court, that counsel had in fact witnessed the jurors in question specifically viewing Swopes in restraints, that would also make a better record than the mere "assumptions" of trial counsel, as are set forth above.

■ More problematic for Swopes is that he has failed to demonstrate that the trial court's ruling constituted plain error *even when assuming that one or more jurors in fact saw him briefly while in handcuffs/shackles.* "[A] brief, inadvertent exposure of the jury to a handcuffed defendant while [the] defendant is being escorted from one place to another does not deprive [the] defendant of a fair trial." *State v. Sanders*, 903 S.W.2d 234, 239 (Mo. App. E.D.1995) (citing *State v. Beal*, 470 S.W.2d 509, 515–16 (Mo. banc 1971); *State v. Clements*, 849 S.W.2d 640, 647 (Mo.App. S.D.1993); *State v. McMillian*, 779 S.W.2d 670, 672 (Mo.App. E.D.1989)). " 'This is so because it is a normal and regular, as well as a highly desirable and necessary, practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this.' " *State v. Snowden*, 285 S.W.3d 810, 814–815 (Mo.App.

---

5. Obviously this situation was not ideal. Indeed, the trial court acknowledged this on the record, and promised to ameliorate the situa-tion in the future. Swopes points to no other similar subsequent occurrence at any other time during his jury trial.

S.D.2009) (quoting *Smith*, 996 S.W.2d at 523). "Thus, a brief, inadvertent exposure to the jury of a handcuffed defendant does not deprive the defendant of a fair trial and cannot be said to result in prejudice." *Smith*, 996 S.W.2d at 523. "As such, even if jurors did briefly observe the appellant in handcuffs, as claimed, we find no prejudice to him from this fact." *Id.*

Swopes ignores this well settled line of Missouri case law. Instead, Swopes seems to contend that the United States Supreme Court's holding in *Deck* somehow abrogated the principles outlined above. But in *Deck* the Supreme Court dealt with the distinct situation where a trial court ordered the shackling of a defendant in open court during the entire court proceeding, while the jury was hearing evidence in the criminal matter at hand. *Deck*, 544 U.S. at 625, 125 S.Ct. 2007. Indeed, post-*Deck*, the Missouri Supreme Court has concluded that *Deck* has not disturbed the above line of cases. *State v. Taylor*, 298 S.W.3d 482, 512 (Mo. banc 2009) ("In fact, brief, inadvertent exposure of the jury of a handcuffed defendant while he is being taken from one place to another does not deprive defendant of a fair trial.").

> *Deck* involved the extension of the prohibition of visible shackles without good cause during the guilt phase of a trial to the sentencing phase and involved obvious shackles and restraints during the proceeding itself. *Deck* does not address the use of handcuffs—or any other type of physical restraint—during the transport of an inmate.

*Snowden*, 285 S.W.3d at 814–15 (Mo.App. S.D.2009); *see also State v. Green*, 307 S.W.3d 197, 200 (Mo.App. S.D.2010) ("*Deck* is not directly implicated if the jury is briefly and inadvertently exposed to a defendant in handcuffs."). It is undisputed that such was not the case here, wherein at worst some of the members of the jury saw Swopes shackled for a brief moment in time while he was being taken from the courtroom to the restroom.

Swopes's failure to demonstrate prejudice in this regard is particularly problematic in light of the fact that his claim is subject to plain error review. For all of the aforementioned reasons, we cannot conclude that a miscarriage of justice or manifest injustice resulted below from the trial court's denial of Swopes's motion for a mistrial.

Point denied.

## Conclusion

The judgment of the circuit court is hereby affirmed.

All concur.